QUESTION:
What is the legal effect of the amendment of `charitable purposes' in s. 196.012(6), F. S., by Ch. 76-234, Laws of Florida?
SUMMARY:
The amendment by Ch. 76-234, Laws of Florida, to s. 196.012(6), F. S., was merely intended to clarify rather than change the law and as such does not affect the validity of the resolution of the Governor and Cabinet, acting as head of the Department of Revenue, adopted on September 3, 1974, relating to fraternal and benevolent organizations and promulgated as Rule 12D-7.18, F.A.C. Therefore, Rule 12D-7.18, F.A.C., as to tax exemptions for fraternal and benevolent organizations, is still valid and in effect in Florida. It reads as follows:
 (1) The property of nonprofit fraternal and benevolent organizations is entitled to full or predominant exemption from ad valorem taxation when used exclusively or predominantly for charitable, educational, literary, scientific or religious purposes. The extent of the exemption to be granted fraternal and benevolent organizations shall be determined the accordance with those provisions of Chapter 196, F. S., which govern the exemption of all property used for charitable, educational, literary, scientific or religious purposes.
 (2) The exclusive or predominant use of property or portions of property owned by fraternal and benevolent organizations and used for organization, planning and fund-raising activity under s. 196.193(3), F. S., for charitable purposes constitutes the use of the property for exempt purposes to the extent of the exclusive or predominant use. The incidental use of said property for social, fraternal or similar meetings shall not deprive the property of its exempt status.
 (3) Any part of [sic] portion of the real or personal property of a fraternal or benevolent organization leased or rented for commercial or other nonexempt purposes, or used by such organization for commercial purposes, or for uses such as a bar, restaurant or swimming pool shall not be exempt from ad valorem taxes.
The 1976 Session of the Florida Legislature enacted Ch. 76-234, Laws of Florida, by which s. 196.012(6), F. S., was amended with the insertion of the word `legally' so as to read:
 (6) `Charitable purposes' means a function or service which is of such a community service that its discontinuance could legally result in the allocation of public funds for the continuance of the function or service. (Emphasis supplied.)
You also pointed out that there is considerable doubt in your mind and in the minds of the various property appraisers as to what are the ramifications of this change and how the change affects the resolution of the Governor and Cabinet, acting as head of the Department of Revenue, adopted on September 3, 1974, relating to fraternal and benevolent organizations and promulgated as Rule 12D-7.18, F.A.C. In view of these doubts, you raise the question of the continuing validity of the resolution and the rule.
Although a presumption of change in legal rights is probably reasonable in that an amendment is more frequently used to add or take a provision from a law than to interpret it, the fact of amendment by itself does not indicate whether the change is of substance or form — whether a right is added to or taken from the original act or whether a provision in the original act is merely being interpreted, that is, made more detailed and specific. Stateex rel. Szabo Food Serv., Inc. of N.C. v. Dickinson,286 So.2d 529 (Fla. 1974); 1A Sutherland Statutory Construction s. 22.30 (4th ed. 1972).
The question that arises is what the Legislature meant by the term `legally' as it is used in s. 196.012(6), F. S.
It must be remembered that statutes must be given their plain and obvious meaning. Fixel v. Clevenger, 285 So.2d 687 (3 D.C.A. Fla., 1973). Furthermore, when terms and provisions of a statute are plain, there is no reason for judicial or administrative interpretation; thus, it is presumed the Legislature meant what it said. Leigh v. State ex rel. Kirkpatrick, 298 So.2d 215 (1 D.C.A. Fla., 1974).
The term `legally' as it appears in s. 196.012(6), F. S., is an adverb, used to modify the word `result' and is defined in Webster's New Twentieth Century Dictionary (1971 unabr. ed.) at p. 1034 as: `Legally: `lawfully; according to law; in a legal manner."
In viewing the above definition of the term `legally,' it would appear that the inclusion of this language in the amendment in 1976 was intended to make the statute correspond to what had previously been supposed or assumed to be the law. That is, the allocation of public funds referred to in s. 196.012(6), F. S., could only be done pursuant to some constitutional, statutory, or decisional authority. Thus, it is my opinion that the circumstances here are such that the Legislature merely intended to clarify its original intention rather than change the law.
The remaining question is what, if any, effect the amendment of 1976 to s. 196.012(6), F. S., had on the resolution which was adopted by the Governor and Cabinet, acting as head of the Department of Revenue, and promulgated as Rule 12D-7.18, F.A.C.
A departmental construction of a statute by an agency charged with the enforcement of an act and authorized to make reasonable rules and regulations is presumed to be valid and is accorded considerable weight unless it is shown to be clearly erroneous or unauthorized and contrary to the intent of the statute before a court of competent jurisdiction. State ex rel. Szabo Food Serv., Inc. of N.C. v. Dickinson, supra; State ex rel. Bennett v. Lee,166 So. 565 (Fla. 1936); 1 Fla. Jur. Admin. Law s. 73, pp. 292-293.
Thus, Rule 12D-7.18, F.A.C., is presumed to have been valid when promulgated and continues to enjoy that presumption in view of the fact that the amendment of 1976 to s. 196.012(6), F. S., was merely intended to clarify rather than change the law.
Accordingly, the resolution which was adopted by the Governor and Cabinet, acting as head of the Department of Revenue, and promulgated as Rule 12D-7.18, F.A.C., would appear to be unaffected by the amendment of 1976 to s. 196.012(6), F. S.
Prepared by: Joseph C. Mellichamp III Assistant Attorney General