STATE, *ex rel.* F. G. BENNETT, v. J. M. LEE, as Comptroller.

166 So. 565.

Division A.

Opinion Filed March 12, 1936.

*Zach H. Douglas* and *Parks M. Carmichael,* for Relator;
*Cary D. Landis,* Attorney General, and *H. E. Carter.* and
*J. V. Keen,* Assistants, for Respondent.

BROWN, J.—This is a mandamus proceeding instituted against the State Comptroller to require him to issue to relator Bennett a permit to obtain a license to operate what is known in common parlance as a slot machine. The cause is before us on motion of respondent to quash the alternative writ.

The decision turns upon the validity and construction of Section 12½ of Chapter 17257 of the Laws of 1935, providing for the licensing and regulation of the operation

of certain described coin-operated devices. Said section reads as follows:

"Section 12½. No machine operated under the provisions of this Act shall be maintained or operated within 300 feet of any public school or church; provided, however, that this shall not apply to any machine operated or maintained in any hotel."

From the alternative writ it appears that Bennett operates the "Cypress Inn" in Gainesville, Florida, a sort of sandwich shop, where sandwiches, beer, etc., are sold, and that on January 20, 1936, he filed his application for license with the Comptroller, a copy of which is attached to the writ. The application, among other things, states that the "location at which the machine will be operated" is "The Cypress Inn," in the city of Gainesville, and that such "location" is "within 300 feet of a church." But this is amplified by the further statement that:

"The slot machine described herein, if licensed, will be operated and maintained in the Cypress Inn place of business at a point or physical location more than three hundred (300) feet of and from any public school or church. The building in which the applicant's place of business is located at its nearest point is within Three Hundred (300) feet of a church.

"The building in which applicant's place of business is maintained is divided into two sections and the entire building is twenty-five (25) feet wide and fifty feet long. The main entrance fronting South on a main street and the slot machine sought to be licensed hereby will be maintained and operated on the front part of applicant's place of business more than three hundred (300) feet from a church or school."

Comptroller Lee denied the application upon the ground that the specified location "is within 300 feet of a church."

Relator contends that Section 12½ is unconstitutional because it makes an unfair and unjustifiable discrimination in favor of hotels, contrary to our Florida Bill of Rights and the Fourteenth Amendment to the Federal Constitution.

This statute is not only a taxing or licensing measure; it is, by both its title and provisions, a regulatory law, adopted in the exercise of both the taxing and police powers of the Legislature.

When the classification made by such a law is called in question, if any state of facts can be reasonably conceived of that would sustain it, the existence of that state of facts will be assumed by the courts. One who assails the classification has the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary and unreasonable. Hiers v. Mitchell, 95 Fla. 345, 116 So. 81.

In this connection the Attorney General's brief, filed on behalf of the respondent, makes these pertinent observations:

"The purposes of the police regulation contained in Section 12½ of the Act are to:

"1. Protect children who attend public schools from the temptation of gambling with what little money they may have, which in most cases should be spent for food, and to protect them from all of the other evils of gambling, including the formation of the gambling habit.

"2. Protect houses of worship from the influence of gambling and from the noise and rowdyism so often attendant upon public gambling.

"Stores and other places of business, except hotels, in which these coin-operated gambling devices may be operated, are open to the public and their business appeal is

to all classes and kinds of people who are able to purchase goods or play the machines. It is true that the law forbids a person in charge of such machines to allow any minor to play them (Section 7). It is common knowledge that this provision of the Act is very difficult to enforce, especially when large numbers of children are present. If such gambling machines are allowed to operate in stores and other places of business, other than hotels, in or near the public school buildings, many children will play them regardless of regulations to the contrary, and all will be subjected to the evil influence of gambling. The noise of the operation of such gambling machines located in stores and other places of business, other than hotels, which are patronized by the general public would certainly tend to disturb public worship. The Legislature, in seeking to protect the churches and those who desire to worship therein, has determined that no such machines shall be operated, except in hotels, within 300 feet of a church.

"The reasons for permitting these machines to operate within 300 feet of a public school or church when located within a hotel are:

"1. That hotels do not offer for sale or sell goods, wares, merchandise or services that are purchased by any large section of the general public and, hence, the general public do not congregate at or visit such places; whereas, the general public do visit stores and other places of business and these machines tend to cause crowds to congregate at such places and such crowds would end to disturb public worship.

"2. The school children do not generally frequent hotels while they do visit stores and other places of business in the vicinity of schools.

"3. That hotels do not generally attract groups of people and those people who are there are usually paying guests

who are travelers and strangers and they are not likely to produce noise when operating the machines such as would be produced by a group of people who gather at the average store or other place of business, other than hotels, for the purpose of playing the machines.

"4. Generally the operation of these machines is a mere incident of the hotel business and the management, under constant supervision of the State through the Hotel Commission, will, as a matter of self-protection, see that the machines are operated in an orderly and decent manner."

The state of facts thus outlined may reasonably be conceived to exist, and are sufficient to sustain the constitutional validity of the quoted statutory provision as against the attacks here made upon it.

This conclusion is supported by the holding of this Court in *Ex Parte* Lewinsky, 66 Fla. 324, 63 Sou. 577. See also *In Re* Kidd, 5 Cal. A. 159, 89 Pac. 987; Bloss v. Lewis, 109 Cal. 499, 41 Pac. 1081; Ohio, *ex rel.* Lloyd, v. Dollison, 194 U. S. 445, 48 L. Ed. 1062; M. K. & T. R. Co., v. May, 194 U. S. 267, 48 L. Ed. 971. In the last cited case, the late Justice HOLMES made this characteristic observation: "When a state Legislature has declared that in its opinion policy requires a certain measure, its action should not be disturbed by the courts under the Fourteenth Amendment, unless they can see clearly that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched. * * * Great constitutional provisions must be administered with caution. Some play must be allowed for the joints of the machine, and it must be remembered that Legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts."

The second question involved is one of construction.

The language of the quoted section is that: "No machine operated under the provisions of this Act shall be maintained or operated within 300 feet of any public school or church," etc. Does that mean that the distance shall be measured from the physical location of the machine, that is, from the machine itself, to the church or school; or does it mean that the distance should be measured from the operator's store or place of business or the nearest point within its confines, to the church or school? If the latter, then if any part of the space within the walls or confines of the proposed operator's store or place of business is within 300 feet of any church or public school, the application for license permit should be denied. And this latter construction is the one adopted by the Comptroller, who, by Section 6 is charged with the administration and enforcement of the Act, and for that purpose is authorized to make such reasonable rules and regulations as he may deem expedient. Undoubtedly this construction facilitates the administration and enforcement of the Act. These machines are movable personal property. If the distance is to be measured from the machine itself, or that space on the floor of the applicant's place of business where he proposes or promises to place and operate it, if given a license, the machine could readily be moved at any time from that spot to some other within the four walls of applicant's place of business, and, if a part of the space within the confines of such place of business was within, and a part without, the 300 feet radius from a nearby church or public school, the ubiquitous possibilities of these machines would, under that construction of the statute, require a small army of inspectors to enforce it.

Elsewhere in the Act references are made to "location tax" and "location operator." Surely this word "location"

does not mean merely the small bit of floor space on which the machine stands. The statute defines a location operator as one "who displays any coin-operated device or devices, as herein defined, to the public to be played or operated by the public." Obviously, a location operator could not "display" the device "to the public to be played" without utilizing a considerable area around or in front of the machine, outside of the small space occupied by the machine itself.

Section 12½ not only says that no such machine shall be "operated" within 300 feet of a church or public school, but it says also that no such machine shall be "maintained" within the prohibited distance. A reference to the dictionary shows that the word "maintain" has a rather comprehensive meaning. And the same is true, to a somewhat lesser extent, of the word "operate." Certainly for a slot-machine to be operated and maintained, within the meaning of the statute, so as to be displayed to the public, and so as to be of any use or profit to the "location operator," more floor space would be required than that occupied by the machine itself. So that Section 12½ of the statute cannot mean that the distance should be measured from the machine itself, or the exact spot on which it for the moment stands, rather than from the store-room or the confines of the place of business, in which it is, or is to be, located. The latter has a fixed and definite location; the former is movable and transient.

When an application is made to the Comptroller for a location operator's license under the statute, the applicant must necessarily specify the location. This suggests to the ordinary intelligence that the applicant must designate his place of business wherein he proposes to place, display and operate the machine. If, therefore, the space within the confines of such designated place of business, unless it be

a hotel, be wholly or in part within 300 feet of a public school or church, such location is banned by the prohibition of said Section 12½. This is the departmental construction, and as it is the rule of this Court to accord considerable weight to such a construction unless it be clearly contrary to the intent of the statute, the construction referred to is approved. State, *ex rel.* Comfort, v. Leatherman, 99 Fla. 899, 128 Sou. Rep. 21.

It is also our view that said section embraces "matters properly connected with the subject" of the Act as stated in its title. Sec. 16, Article III of the Constitution.

The motion to quash the alternative writ is accordingly granted. WHITFIELD, C. J., and DAVIS, J., concur.

ELLIS, P. J., and TERRELL, and BUFORD, J. J., concur in the opinion and judgment.