365 So.2d 759 (1978)
AGRICO CHEMICAL COMPANY et al., Petitioners,
v.
STATE of Florida DEPARTMENT OF ENVIRONMENTAL REGULATION and Sarasota County, Florida, Respondents.
AGRICO CHEMICAL COMPANY, Borden, Inc., Brewster Phosphates, Farmland Industries, Inc., Gardinier, Inc., International Minerals & Chemical Corporation, Mobil Chemical Company, Occidental Chemical Company, Swift Agricultural Chemicals, Uss Agri-Chemicals (a Division of United States Steel Corporation), and W.R. Grace & Co., Appellants,
v.
STATE of Florida DEPARTMENT OF ENVIRONMENTAL REGULATION, and State of Florida Environmental Regulation Commission, Appellees, and
Sarasota County, Florida, Intervenor/Appellee.
AGRICO CHEMICAL COMPANY, Borden, Inc., Brewster Phosphates, Farmland Industries, Inc., Gardinier, Inc., International Minerals & Chemical Corporation, Mobil Chemical Company, Occidental Chemical Company, Swift Agricultural Chemicals Corporation, Uss Agri-Chemicals (a Division of United States Steel Corporation), and W. R. Grace & Co., Petitioners,
v.
Reubin O'D. ASKEW, Governor, Bruce A. Smathers, Secretary of State, Robert L. Shevin, Attorney General, Gerald A. Lewis, Comptroller, Bill Gunter, Treasurer and Insurance Commissioner, Ralph D. Turlington, Commissioner of Education, and Doyle Conner, Commissioner of Agriculture, As the Governor and Cabinet of the State of Florida, and State of Florida Department of Environmental Regulation, Respondents.
Nos. FF-95, FF-340 and GG-448.
District Court of Appeal of Florida, First District.
December 1, 1978.
Dissenting Opinion On Denial of Rehearing January 16, 1979.
*761 Robert L. Rhodes, Jr., Chesterfield Smith, Lakeland, and W. Daniel Stephens of Holland & Knight, Tampa, for petitioners.
Robert L. Shevin, Atty. Gen., J. Kendrick Tucker, Asst. Atty. Gen., R.L. Caleen, Jr., Tallahassee, Richard L. Smith of Nelson, Hesse, Cyril & Weber, Sarasota, for respondents.
BOYER, Judge.
The central issue in each of the three cases which have been consolidated for consideration by this court relates to the validity (or invalidity) of proposed rules of the Department of Environmental Regulation (Department) which concern effluent standards for phosphate mining and processing operations. The petitioners-appellants are all engaged in the phosphate industry in Florida and will be referred to as the Industry. Since the issues presented by the three cases are closely related and the cases have all been consolidated, we will address only those procedural issues raised by the parties, making no attempt to resolve any apparent problem regarding what constitutes final agency action when both F.S. 120.54(4) and F.S. 403.804 are involved. Nor do we find it necessary, for the same reasons, to address here the issues discussed in Carrollwood State Bank v. Lewis, 362 So.2d 110 (Fla. 1st DCA 1978), and cases therein referred to.
In November, 1976, the Department published a notice in the Florida Administrative Weekly of its intent to adopt a proposed rule entitled "Effluent Guidelines and Standards for Mineral Mining and Processing  Subpart R Phosphate Rock Subcategory." Adoption was scheduled to take place at a public hearing before the State of Florida Environmental Regulation Commission (Commission) which is the environmental standard-setting body of the Department, on December 1, 1976. The Industry filed a timely "Petition for Administrative Determination of A Proposed Rule" with the Division of Administrative Hearings pursuant to F.S. 120.54(4). Notwithstanding the pendency of that petition, which was duly assigned to a hearing officer, the Commission held its scheduled public hearing *762 on December 1 and 2, 1976, and "approved" the proposed rule over the Industry's objection. The Industry objected to the proceedings before the Commission on the ground that the action was prohibited by F.S. 120.54(4)(c).
On December 27, 1976, Sarasota County (Sarasota) was permitted to intervene.
On December 29 and 30, 1976, and January 4, 1977, a hearing was held before the hearing officer who rendered a final order on January 31, 1977, implicitly upholding the validity of the proposed rule. That order, declared to be "final agency action" by F.S. 120.54(4)(d) resulted in the filing of a petition for review in this court, which was assigned Case No. FF-95. In the challenged order, the hearing officer found, inter alia, that the subject rule is more stringent than current federal guidelines under the jurisdiction of the Environmental Protection Agency.
The final order, further recited:
"* * * Under a claim that a proposed rule is arbitrary, unreasonable or factually unsound, the Petitioners must demonstrate that the rule is so totally unfounded as to be completely beyond reason. Under the evidence submitted in this case, this burden has not been met."
That holding is the nucleus of the Industry's first point.
In Conner v. Cone, 235 So.2d 492 (Fla. 1970) the Supreme Court of Florida had occasion to consider a statute regulating dairy products and their substitutes. The Court there said:
"* * * We recognized in the Setzer case, supra, [Setzer v. Mayo, 150 Fla. 734, 9 So.2d 280 (1942)] that the Legislature had the power to prescribe a standard for dairy products in the interest of public health and the general welfare and that filled milk was generally considered to be injurious to health. We also recognized, however, that the Legislature's power in this regard was not absolute. Any prohibition under the police power must have some relation to the protection of the health, morals, safety or welfare of the public, and if no relation can be shown which is reasonable, then such prohibition must be taken as arbitrary and capricious, the effect of which is to deprive one of property without due process, or to deprive one of equal protection under law." (Emphasis added: 235 So.2d at page 494)
Given a proposed rule within the general area of regulation delegated by the legislature to an agency, the test of arbitrariness is the same for the proposed rule as it would be for a statute having the same effect. Fla. Citrus Comm'n v. Owens, 239 So.2d 840, 848 (Fla. 4th DCA 1969), cert. denied, 242 So.2d 873 (Fla. 1971).
Rulemaking by an agency is quasi-legislative action and must be considered with deference to that function. In Florida Beverage Corporation v. Wynne, 306 So.2d 200 (Fla. 1st DCA 1975), this Court said:
"Where the empowering provision of a statute states simply that an agency may `make such rules and regulations as may be necessary to carry out the provisions of this Act', the validity of regulations promulgated thereunder will be sustained so long as they are reasonably related to the purposes of the enabling legislation, and are not arbitrary or capricious."
Similarly, the United States Supreme Court in Thompson v. Consolidated Gas Corp., 300 U.S. 55, 57 S.Ct. 364, 81 L.Ed. 510 (1937), in reviewing administrative regulations relating to the production of gas by landowners, found that the test for validity was whether the regulations are found to have a reasonable relationship either to the prevention of waste or the protection of correlative rights, or whether they are arbitrary.
F.S. 120.54(4), is the statute under which a hearing officer initially determines the validity or invalidity of a proposed agency rule. It provides that any substantially affected person may seek an administrative determination of invalidity on the ground that the proposed rule is "an invalid exercise of delegated legislative authority." The challenge under F.S. 120.54(4) is a two-step process: The challenge is first heard before an administrative hearing officer *763 whose order "shall be final agency action." That final agency action is subject to judicial review. Both the hearing officer (acting in a detached quasi-judicial capacity) and this Court should determine from the evidence presented whether or not there is competent, substantial evidence to support the validity of the rule.
Thus, in a 120.54 hearing, the hearing officer must look to the legislative authority for the rule and determine whether or not the proposed rule is encompassed within that grant. The burden is upon one who attacks the proposed rule to show that the agency, if it adopts the rule, would exceed its authority; that the requirements of the rule are not appropriate to the ends specified in the legislative act; that the requirements contained in the rule are not reasonably related to the purpose of the enabling legislation or that the proposed rule or the requirements thereof are arbitrary or capricious.
A capricious action is one which is taken without thought or reason or irrationally. An arbitrary decision is one not supported by facts or logic, or despotic. Administrative discretion must be reasoned and based upon competent substantial evidence. Competent substantial evidence has been described as such evidence as a reasonable person would accept as adequate to support a conclusion.
The requirement that a challenger has the burden of demonstrating agency action to be arbitrary or capricious or an abuse of administrative discretion is a stringent one indeed. However, the degree of such required proof is by a preponderance of the evidence which is substantially different from that imposed by the hearing officer, viz: "So totally unfounded so as to be completely beyond reason."
We conclude, therefore, that in considering the evidence adduced before him and in rendering the order of January 31, 1977, the hearing officer applied a more onerous burden on the Industry than that required by law. In view of the conflicting evidence, the multiplicity of issues and the complexity of the facts, it would be presumptuous on our part to attempt to determine from the voluminous record before us whether the application of a different burden of proof, viz, by a preponderance of the evidence, would have resulted in different conclusions by the hearing officer. We accordingly reverse and remand for that determination.
To facilitate disposition on remand, we further hold that the hearing officer correctly ruled that the economic and environmental impact statements prepared in compliance with F.S. 403.804(2) satisfies the requirements of that law and that the economic impact statement sufficiently satisfies the requirements of F.S. 120.54(2). Neither did the hearing officer err by refusing to hear proffered evidence relating to the procedures used, and conclusions of, the United States Environmental Protection Agency in developing effluent limitations guidelines for the phosphate rock mining industry under regulations similar to those of the Department.
Neither do we find that the hearing officer violated F.S. 120.57(1)(b)(4) nor F.S. 120.59(2) nor the principles announced in Stuckey's of Eastman, Georgia v. Department of Transportation, 340 So.2d 119 (Fla. 1st DCA 1976). As we stated in Forrester v. Career Service Commission, 361 So.2d 220 (Fla. 1st DCA 1978):
"Pursuant to F.S. 120.57, a party has the right to raise pertinent factual issues for administrative determination, to submit proposed findings on those issues and to receive a ruling on each pertinent proposed finding. * * * However, in so holding we stress that an agency head is not required to make explicit rulings on subordinate, cumulative, immaterial or unnecessary proposed facts. Those proposed findings which fall in such a category may be rejected by a simple statement that they are immaterial or irrelevant. * * *"
The other points raised in Case No. FF-95 may be affected by our above holding regarding the required degree of proof, therefore, they need not be addressed here.
*764 F.S. 403.804(2) provides that when any proposed standard that would be stricter or more stringent than one which has been set by federal agencies pursuant to federal law or regulation, the Environmental Regulation Commission (Commission) shall direct the department to have a study conducted of the economic and environmental impact which sets forth the benefits and costs to the public, which studies shall be submitted to the Governor and Cabinet. The statute further provides that final action shall be by the Governor and Cabinet "who shall accept, reject, modify, or remand for further proceedings the standard within 60 days from the submission." Such reviews, the statute provides, shall be appellate in nature and the hearings shall be in accordance with the provisions of the Administrative Procedures Act.
At a meeting held on June 7, 1977, the Governor and Cabinet approved the challenged rule subject to the requirement that it be modified to reflect an effective date of October 1, 1977. The rule was filed with the Department of State on June 27, 1977. The Industry filed in this court a timely petition for review which was assigned Case No. GG-448.
Inasmuch as the Commission "approved" the rule on December 2, 1976 prior to the entry of the hearing officer's order on January 31, 1977, the Industry urges that the Commission's action was a nullity and that the rule was not therefore properly before the Governor and Cabinet for final action in accordance with F.S. 403.804(2). The basis of such contention is found in F.S. 120.54(4)(c) which states that "No rule shall be adopted until 21 days after the notice required by subsection (1) or until the hearing officer has rendered his decision, as the case may be." The controversy revolves around a construction of the word "adopted" as used in F.S. 120.54(1)(c) and as used in F.S. 403.804(2) which statutes must, in this type of case, be construed so as to harmonize.
A reading of the language in F.S. 120.54, and related sections, reveals that rule "adoption" is a process. The process of adoption outlined in the Florida Administrative Procedure Act (APA) includes the publication and delivery of requisite notice, (F.S. 120.54(1)) the development of an economic impact statement (F.S. 120.54(2)), the consideration (under certain circumstances) of evidence and arguments presented at a public hearing (F.S. 120.54(3)), the filing of the proposed rule with the legislative Administrative Procedures Committee (F.S. 120.54(11)(a)) and the filing of the proposed rule with the Department of State (F.S. 120.54(11)(b)).
A unique additional step in the adoption process applicable to the Department and Commission arises when (as in the instant case) a proposed environmental standard is more stringent than a federal standard. In such a case, the Commission initially adopts a rule subject to final action by the Governor and Cabinet. (F.S. 403.804(2)).
Finally, F.S. 120.54(12), states that a proposed rule "shall be adopted on being filed with the Department of State and become effective twenty days after being filed, on a later date specified in the rule, or on a date required by statute." (emphasis added) The latter statute provides a definite benchmark for the completion of the adoption process.
The Industry contends that it is the Commission's "approval" portion of the rulemaking process which is the "adoption" prohibited by F.S. 120.54(4)(c) until after the hearing officer has rendered his decision. We agree.
This court has recognized that the Legislature intended that the use of the term "adoption" may refer to an act of "approval". In Riley-Field Co. v. Askew, 336 So.2d 383 (Fla. 1st DCA 1976), we discussed timing requirements for perfecting appellate review of agency rulemaking. In summarizing the facts, we stated:
"* * * [P]etitioners seek review of [a rule] which the Administration Commission of the Department of Administration adopted March 9, 1976 and filed in the office of the Secretary of State on March 10, designating much of Monroe County *765 as an area of critical state concern * * Because the petitions for certiorari were not filed within thirty (30) days after the rule's adoption and filing, respondents moved to dismiss the petitions as untimely filed * * *" (336 So.2d at page 384) (Emphasis added)
By that language we implicitly recognized that "adoption" under the APA may refer to an agency's action in "approving" a rule.
The Industries statutory interpretation is consistent with other provisions of the APA. Normally, the rule adoption process consists of a series of inexorable, nondiscretionary activities within specific time frames. Notice of proposed rulemaking must be published prior to the intended action. (F.S. 120.54(1)) The filing of the Proposed Rule completes the adoption process. (F.S. 120.54(12))
The completion of a rulemaking public hearing held by the Commission would thus normally set into motion the statutory timetable. No later than forty-five days after the notice of proposed rulemaking, or no later than ten days after the public hearing (if the hearing extends beyond the 45-day period), the proposed rule must be filed with the Secretary of State. The proposed rule is then finally adopted. F.S. 120.54(4)(c), however, prohibits the adoption of a proposed rule until after the hearing officer renders his decision on the validity of the proposed rule. The hearing officer's ruling may not be available for as long as approximately eighty-four days from the date of the notice of intent to adopt a rule. (The petition for administrative determination must be filed within 14 days of the notice. F.S. 120.54(4)(b). A hearing officer must be assigned within 10 days after the receipt of a well pleaded petition. F.S. 120.54(4)(c). A hearing must be held within 30 days from the date the hearing officer is assigned. Id. The hearing officer must render his decision within 30 days after the conclusion of the hearing. Id.)
The Industries' interpretation of the law also provides a logical solution to the tension between the mandatory filing requirements of F.S. 120.54(11)(b) and the prohibition against premature adoption set forth F.S. 120.54(4)(c). Once the public hearing is "stayed" pending the outcome of the hearing before the hearing officer the time limits in F.S. 120.54(11)(b) are likewise held in abeyance. The statute clearly contemplates that a public hearing may extend beyond forty-five days from the date of notice of proposed rulemaking. If the hearing officer rules in favor of the validity of the proposed rule, then the public hearing would be held and the adoption process could continue on to its ultimate conclusion.
F.S. 403.804(2) provides that the Commission must require the Department to prepare an economic and environmental impact analysis prior to the adoption of rules that are more stringent than existing federal standards. The statute further states:
"Such studies as are provided for in this paragraph shall be submitted to the Commission, who shall initially adopt the standards. Final action shall be by the Governor and Cabinet, who shall accept, reject, modify, or remand for further proceedings this standard within sixty (60) days from the submission. Such review shall be appellate in nature. Hearings shall be in accordance with the provision of Chapter 120."
In that provision, the Legislature clearly used the term "adopt" in a manner that refers to the "approval" of a rule by the Commission. This is particularly significant since the environmental rulemaking legislation was passed after the passage of the general rulemaking procedures set forth in Section 120.54, Florida Statutes. (Compare ch. 75-22, § 6, Laws of Florida with ch. 74-310, § 1, Laws of Florida.) Indeed, the quoted statute explicitly cross references the APA. Where two statutes deal with a similar subject matter, the court must make every effort to find a harmonious construction of both statutes. (Mann v. Goodyear Tire & Rubber Co., 300 So.2d 666 (Fla. 1974)) The Industries correctly contend that F.S. 403.804(2) can only be read harmoniously with F.S. 120.54(4)(c) if the word "adopted" in the latter statute is construed to refer to the process of "approving" a proposed rule.
*766 Our interpretation will also most certainly lead to a more rational expenditure of public and private resources. Under the contrary analysis, two extensive public hearings (one before the Commission and one before the hearing officer) on a proposed rule would be held in which both proponents and opponents of a proposed rule would expend time and monies presenting their positions. That is precisely what occurred sub judice. Since the hearing officer's ruling must be made within a definite time span, it makes more sense to stay any Commission public hearing procedures and any "approval" action pending that ruling. To force the expenditure of public and private resources in the face of a challenge to the basic validity of an exercise of delegated legislative authority is unreasonable. Where legislative language is susceptible to more than one interpretation, the interpretation which avoids an unreasonable result should be preferred. (See Foley v. State, 50 So.2d 179 (Fla. 1951); Gracie v. Deming, 213 So.2d 294 (Fla. 2nd DCA 1965))
In summary, F.S. 120.54(4)(c), expressly prohibited the Commission from holding a public hearing and adopting the Proposed Rule until after the hearing officer rendered his ruling on the validity of the Proposed Rule. Such interpretation of the law leads to consistency among various provisions of the APA and between the APA and other related statutes. Since the Commission had never validly adopted the proposed rule (standard) as required by F.S. 403.804(2) it was prematurely considered by the Governor and Cabinet.
Our holding on this issue likewise renders premature any further consideration by us of the other points raised in case No. GG-448.
Finally, by case No. FF-340, the Industry seeks reversal of a summary judgment entered by the Circuit Court of Leon County in a proceeding wherein the Industry sought to have that court declare that the Commission's action in "approving" the proposed rule was contrary to the requirements of F.S. 120.54(4)(c) and to have the Department enjoined from presenting the proposed rule to the Governor and Cabinet for final action. The learned Circuit Judge denied relief. Our disposition of the identical point in case No. GG-448, already covered in this opinion, renders further consideration unnecessary: It also renders that proceeding moot.
Accordingly, in case No. FF-340 we reverse. In case No. FF-95 and case No. GG-448 we grant the Petitions for Review and reverse and remand for further proceedings in accordance with Chapter 120, Florida Statutes, and Chapter 403, Florida Statutes, as herein construed.
IT IS SO ORDERED.
McCORD, C.J., and MELVIN, J., concur.

ON MOTIONS FOR REHEARING
PER CURIAM.
Rehearing Denied.
BOYER and MELVIN, JJ., concur.
McCORD, C.J., dissents.
McCORD, Chief Judge, dissenting.
I would grant the motions for rehearing to the extent of providing that the previous adoption of the proposed rule by the Environmental Regulation Commission and the Governor be held in a suspense status pending remand to the hearing officer for reevaluation of the evidence using proper standards; that should the hearing officer then rule the proposed rule to be valid, and if that ruling should become final, at such time the proposed rule would then become effective as a rule without further proceedings unless the Environmental Commission or the Governor should direct that there be de novo proceedings before them.