446 So.2d 1063 (1984)
GENERAL TELEPHONE CO. OF FLORIDA, et al., Appellants,
v.
FLORIDA PUBLIC SERVICE COMMISSION, et al., Appellees.
No. 63091.
Supreme Court of Florida.
February 2, 1984.
*1065 James V. Carideo, Lorin H. Albeck, Leslie R. Stein and Michael W. Tye, Tampa, for appellant, General Tel. Co. of Florida.
Norman H. Horton, Jr., of Mason, Erwin & Horton, Tallahassee, for appellant, United Tel. Co. of Florida.
William S. Bilenky, Gen. Counsel, Patrick K. Wiggins, Deputy Gen. Counsel, and Jose A. Diez-Arguelles, Associate Gen. Counsel, Tallahassee, for appellee, Florida Public Service Com'n.
Jack Shreve, Public Counsel, and Kenneth A. Hoffman, Associate Public Counsel, Tallahassee, for appellee, The Citizens of the State of Florida.
ADKINS, Justice.
This case is before us for review of Public Service Commission (PSC) Order No. 11448, by which the PSC promulgated Florida Administrative Code Rule 25-14.04. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.
The rule, as an action by an administrative agency, was adopted pursuant to the procedures specified in the Florida Administrative Procedures Act. §§ 120.50-.73, Fla. Stat. (1981). On October 8, 1982, the PSC issued an order proposing rulemaking pursuant to section 120.54(1), Florida Statutes (1981), and notice of the proposed rulemaking was subsequently published in the Florida Administrative Weekly. On October 27, 1982, appellants requested a hearing on the proposed rule. On November 3, 1982, a hearing was held pursuant to section 120.54(3), Florida Statutes (1981). Appellants and other interested parties participated in the hearing, where they were able to present evidence, cross-examine witnesses, and were generally able to inform the PSC of their views on the proposed rule. *1066 On November 19, 1982, the PSC hearing officer who presided over the section 120.54(3) hearing announced his recommended version of the rule. The PSC adopted the rule as recommended through Order No. 11448 on December 27, 1982, despite exceptions to the recommended rule having been filed by appellants and other interested parties. On January 17, 1983, appellants filed for review in this Court.
The text of Florida Administrative Code Rule 25-14.04 is as follows:
25-14.04 Effect of Parent Debt on Federal Corporate Income Tax.
In Commission proceedings to establish revenue requirements or address over-earnings, other than those entered into under Rule 25-14.03, F.A.C., the income tax expense of a regulated company shall be adjusted to reflect the income tax expense of the parent debt that may be invested in the equity of the subsidiary where a parent-subsidiary relationship exists and the parties to the relationship join in the filing of a consolidated income tax return.
(1) Where the regulated utility is a subsidiary of a single parent, the income tax effect of the parent's debt invested in the equity of the subsidiary utility shall reduce the income tax expense of the utility.
(2) Where the regulated utility is a subsidiary of tiered parents, the adjusted income tax effect of the debt of all parents invested in the equity of the subsidiary utility shall reduce the income tax expense of the utility.
(3) The capital structure of the parent used to make the adjustment shall include at least long term debt, short term debt, common stock, cost free capital and investment tax credits, excluding retained earnings of the subsidiaries. It shall be a rebuttable presumption that a parent's investment in any subsidiary or in its own operations shall be considered to have been made in the same ratios as exist in the parent's overall capital structure.
(4) The adjustment shall be made by multiplying the debt ratio of the parent by the debt cost of the parent. This product shall be multiplied by the statutory tax rate applicable to the consolidated entity. This result shall be multiplied by the equity dollars of the subsidiary, excluding its retained earnings. The resulting dollar amount shall be used to adjust the income tax expense of the utility.
Appellants challenge the PSC rulemaking on several grounds. First, appellants claim that the record established at the section 120.54(3) hearing shows substantial evidence weighing against adoption of the rule and that, in fact, the record shows no evidence in support of the rule, thus making the PSC's adoption of the rule an arbitrary decision. Second, appellants claim that the rule is substantively invalid because implementation of the rule prevents a utility from receiving a fair rate of return on investment as provided by section 364.14, Florida Statutes (1981), and because the rule abridges due process guarantees which require that ratemaking orders be based on competent and substantial evidence of record.
For the reasons stated below, we find that appellants' challenges are without merit and we uphold the rulemaking in all respects.
In order to evaluate appellants' challenges regarding the sufficiency of the evidence supporting the rule, we must specify the proper standard for judicial review of the rulemaking in this case. The PSC, as does any other administrative agency, acts in both quasi-legislative and quasi-judicial capacities. This Court has recognized that agency rulemaking pursuant to statutory authorization, such as the PSC rulemaking in this case, is a quasi-legislative function. See Daniel v. Florida State Turnpike Authority, 213 So.2d 585, 586 (Fla. 1968).
The legislature has provided the PSC with the "power to prescribe fair and reasonable rates and charges ... to be observed by each utility ... and to prescribe *1067 all rules and regulations reasonably necessary and appropriate for the administration and enforcement of this chapter." § 366.05(1), Fla. Stat. (1981). The rulemaking in this case, as is all PSC rulemaking involving utility rates, is authorized by § 350.127(2), Fla. Stat. (1981), which provides the PSC the power to "adopt ... rules reasonably necessary to implement any law which it administers."
Despite the section 120.54(3) hearing where interested parties made statements under oath and were subjected to limited cross-examination, we find that the rulemaking in this case retained its quasi-legislative nature. In this context, we agree with the characterization of a section 120.54(3) hearing set forth by the district court in Balino v. Department of Health and Rehabilitative Services, 362 So.2d 21 (Fla. 1st DCA 1978), cert. denied, 370 So.2d 458 (Fla. 1979), where the hearing was described as a quasi-legislative proceeding intended to facilitate the exchange of information between interested parties and not to be restricted to technical rules of evidence. Such a hearing is designed only to allow an agency to inform itself to the fullest extent possible prior to rulemaking, and not to adjudicate any issues or be conducted in the adversarial manner normally associated with judicial or quasi-judicial proceedings.
As a quasi-legislative proceeding, our review of the rulemaking is more limited than would be review of a quasi-judicial proceeding. The standard of review for a quasi-legislative proceeding must differ from that for a quasi-judicial proceeding, as a qualitative, quantitative standard such as competent and substantial evidence is conceptually inapplicable to a proceeding where the record was not compiled in an adjudicatory setting and no factual issues were determined. We adopt as the proper standard of review one set forth by the First District Court of Appeal upon review of similar rulemaking:
Where the empowering provision of a statute states simply than an agency may "make such rules and regulations as may be necessary to carry out the provisions of this Act," the validity of the regulations promulgated thereunder will be sustained as long as they are reasonably related to the purposes of the enabling legislation, and are not arbitrary or capricious.
Agrico Chemical Co. v. State, Department of Environmental Regulation, 365 So.2d 759 (Fla. 1st DCA 1978), cert. denied, 376 So.2d 74 (Fla. 1979); Florida Beverage Corp. v. Wynne, 306 So.2d 200 (Fla. 1st DCA 1975).
We find that the rule adopted by the PSC is neither arbitrary or capricious. The rule represents a valid implementation of a PSC policy choice regarding the treatment of a utility's income tax expense during ratemaking. Testimony put forth during the section 120.54(3) hearing shows that there is no single correct method of dealing with the income tax expense of a subsidiary-utility joining in the filing of a consolidated return. By choosing this particular method, the PSC is merely acting within the scope of its discretion. It is clear that this Court will not substitute its judgment for that of the PSC on a discretionary decision. Citizens of Florida v. Mayo, 357 So.2d 731 (Fla. 1978). This particular policy choice finds ample support in the record, where it is shown that an income tax expense adjustment had been implemented in several past ratemaking cases in basically the same form as the rule now provides. In fact, this Court has instructed the PSC to apply this type of adjustment in a ratemaking case when the facts of the case were found to warrant such an adjustment. See Citizens of Florida v. Hawkins, 356 So.2d 254 (Fla. 1978). We therefore find that appellants' evidentiary challenges to the rulemaking are without merit.
Appellants challenge the rule itself on two substantive grounds, the first being that use of the rule would deny a utility the opportunity to earn a fair rate of return as required by section 364.14, Florida Statutes (1981). Specifically, they claim the adjustment to a utility's income tax expense figure, said figure having already been calculated *1068 from the utility's revenue and expenses, would result in an improperly low final income tax expense figure. This lower tax expense figure would be included in the total cost of service, from which would be calculated the revenue required to provide the utility a fair rate of return on investment. Since the required revenue would be calculated on an unrealistically low expense figure, a portion of the revenues which would have been considered a return on investment would in reality go towards paying for the actual tax expense. The end result would be that the utility receives an actual rate of return less than that set by the PSC during the ratemaking where the incorrectly lower expense figure was used. Since the rate base on which the rate of return is calculated remains unchanged regardless of the change in income tax expense, appellants therefore argue that the adjustment denies a utility a fair rate of return.
When determining the amount of income tax expense to be allocated to a utility during ratemaking, as with any cost of service expense, the PSC attempts to ascertain a pragmatic figure which reflects the actual cost to the utility of providing service to the ratepayers. As stated by this Court in a footnote to the Hawkins decision when we were faced with a dispute over the proper income tax expense to be charged a utility, "actualities ... are always to be preferred over hypotheticals." 356 So.2d at 260 n. 18. It must be noted that the PSC is not bound to any pre-determined formula for calculating any cost of service expense, but instead is free to use any method which will enable it to ascertain the actual cost to the utility.
Appellants argue that the proper income tax expense figure to be included in the cost of service of a utility is the amount determined according to the federal tax laws on the basis of the utility as an independent entity filing a separate return. Such a method, they claim, properly matches deductions with the expenses that generated those deductions, and is the method used on all of the utility's financial statements. To lower the income tax expense figure by attributing to the utility a portion of the interest expense on the parent's debt would result in improper matching of expenses and deductions, since the utility does not include in cost of service any portion of the interest paid on the parent's debt. In addition, appellants claim that even though they join in the filing of a consolidated return, the individual tax liability of a utility within the consolidation is allocated as if the utility were an independent entity filing a separate return.
Regardless of the accuracy of these claims from an accounting, financial or tax standpoint, a utility participating in the filing of a consolidated return does not remit to the government, nor is it liable for, the amount in taxes which would have been assessed had the utility filed a separate return. In filing a consolidated return, the participating entities combine their respective taxable incomes and losses to produce a figure from which the consolidated tax liability is determined. Once the consolidated liability is determined, each participating entity becomes jointly and severally liable for payment. The tax liability of a participating entity loses any independent significance outside of the consolidated liability. We find that appellants' arguments for separate entity tax expense treatment are unrealistic since the only tax liability of actual significance, that of the consolidated entity, is a product of the combined gains and losses of all the participating entities and is not discharged in a practical sense by each participating entity paying that proportion of the total liability attributable to its operation as a separate entity.
Although we have stated that it is conceptually inaccurate to speak of the separate tax expense of a subsidiary utility joining in a consolidated return, nevertheless such a figure must be ascertained for ratemaking purposes. We find that the adjustment implemented by the rule in question and the resulting income tax expense attributed to the utility are more representative of the economic realities of a parent-subsidiary consolidated tax liability *1069 than is an expense figure calculated as if the subsidiary utility had filed a separate return.
In the normal course of a parent-subsidiary relationship, the parent issues debt in order to acquire capital to support the operations of its subsidiaries. The capital is transferred to the subsidiary in exchange for stock in the subsidiary. As a practical matter, the equity of the subsidiary is thus directly supported by the debt of the parent. The debt of the parent used to support the subsidiary generates interest expense for the parent, which in turn is tax deductible. Although the capital is passed on through to the subsidiary, there is no corresponding pass-through of interest expense because the parent passes on the capital to acquire an ownership interest in the subsidiary as opposed to a creditor's interest. Therefore, the nature of the acquired capital changes from debt to equity at the point the capital passes from parent to subsidiary.
If the parent and subsidiary had chosen to maintain their separate tax identities, the distinction between the capital acquired through debt by the parent and through equity by the subsidiary would have been valid. By filing a consolidated return, however, the entities have removed the separation between parent and subsidiary for tax purposes. No longer is it realistic to treat transactions between parent and subsidiary as transactions between separate entities. Parent and subsidiary are now components of the consolidated entity and the debt issued by the parent component supports the capital structure of the subsidiary component. The pragmatic result is that the consolidated entity has issued debt to support its overall capital structure and the interest paid on the debt goes toward reducing the tax liability of the consolidated entity, therefore benefiting each component member. The adjustment implemented by the rule in question merely allocates to the subsidiary component the interest expense deduction generated by the proportion of the consolidated debt that is used to support the subsidiary component's capital structure. Similar approaches for determining, in ratemaking, the proper allocation of income tax expense for a utility joining in the filing of a consolidated return have been adopted in at least eighteen jurisdictions, see 1 A. Priest, Principles of Public Utility Regulation 54-56 (1969), and by the Federal Energy Regulatory Commission. See Re Columbia Gulf Transmission Co., Opinion No. 173, 54 PUR4th 31 (1983). We agree with these authorities and find that, in ratemaking proceedings where a separate income tax expense figure must be ascertained for a subsidiary utility joining in a consolidated tax return, the adjustment provided by the rule results in an income tax expense figure which realistically reflects the actual costs incurred by the utility. Since the adjusted figure accurately represents the income tax expense, revenue requirements based on that expense figure would not be set incorrectly and the utility therefore is not denied a fair rate of return on investment.
Finally, appellants make a second substantive challenge on the basis that the rule deprives them of due process guarantees which provide them the opportunity to have their income tax expense figures determined on a case-by-case basis by competent and substantial evidence. We have already determined on a general basis that an adjustment to income tax expense which takes into account the interest expenses and corresponding tax deductions generated by the parent's debt is a proper method of determining a subsidiary-utility's actual incurred income tax expense when the utility joins in a consolidated filing. Since implementation of the rule does result in a proper income tax expense figure being attributed to the utility for ratemaking purposes, there is no need to have the income tax expense be determined on a case-by-case basis by competent and substantial evidence. The rule provides for a rebuttable presumption that the parent's investment in the subsidiary utility was composed of the same debt-equity ratio as the parent's overall capital structure, and when *1070 this presumption bears true the adjustment provided by the rule will result in the correct income tax expense allocation to the utility. When the presumption is rebutted, the utility will be able to have the actual debt-equity ratio of the parent's investment determined on an individual basis by competent and substantial evidence. Once the ratio is determined, the adjustment will be calculated accordingly and once again the adjusted income tax expense will represent the actual cost incurred by the utility. In addition to the flexibility provided within the rule itself, a utility can seek a variance from the rule pursuant to Florida Administrative Code Rule 25-22.17(4). Also, the utility could, upon a proper showing, convince the PSC to waive or deviate from the rule simply on the basis of an exercise of PSC discretion, and such deviation would be proper as long as adequately explained. See § 120.68(12)(b), Fla. Stat. (1981); E.M. Watkins & Co. v. Board of Regents, 414 So.2d 583, 588 (Fla. 1st DCA 1982), review denied, 421 So.2d 67 (Fla. 1982). We find these various safeguards are sufficient to ensure that the utility will have its income tax expense figure properly calculated in all instances, and we therefore dismiss appellants' due process arguments. We uphold the PSC rulemaking in all respects.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.