603 So.2d 1363 (1992)
FLORIDA LEAGUE OF CITIES, INC., Appellant,
v.
DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellee.
PINELLAS COUNTY, Florida, Appellant,
v.
DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellee.
CITY OF ALTAMONTE SPRINGS, Appellant,
v.
DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellee.
Nos. 90-1733, 90-1748 and 90-1749.
District Court of Appeal of Florida, First District.
August 18, 1992.
*1366 Carole Joy Barice, of Fowler, Barice & Colby, P.A., Orlando, for appellant City of Altamonte Springs.
Harry Morrison, Jr., General Counsel, Florida League of Cities, Inc., Tallahassee, for appellant Florida League of Cities.
Joseph A. Morrissey, Asst. Co. Atty., for appellant Pinellas County, Florida.
Douglas H. MacLaughlin, Asst. General Counsel for State of Florida, Department of Environmental Regulation, Tallahassee, for appellee.
Diane Tremor, of Rose, Sundstrom & Bentley, Tallahassee, for Southern States Utilities, Inc., and Florida Water Works Ass'n, Inc., amici curiae.

ON MOTION FOR REHEARING
ERVIN, Judge.
Appellants in these three consolidated cases appeal from an order dismissing their section 120.54(4)[1] petitions challenging the proposed adoption of Chapter 17-640, Florida Administrative Code, which establishes minimum standards for the management and disposal of domestic wastewater residuals, particularly rule 17-640.300 dealing with permit requirements. The parties raised the following three issues on appeal: (1) Whether the hearing officer erred in determining that appellant Florida League of Cities, Inc. (League), did not have standing to participate in the rule challenge, (2) whether the hearing officer erred in determining that proposed rule 17-640.300 is a valid exercise of legislative authority, and (3) whether the economic impact statement submitted by appellee, the Department of Environmental Regulation (DER), meets the requirements of Section 120.54(2), Florida Statutes (1989). We affirm.
In regard to the standing issue, Section 120.54(4)(a), Florida Statutes (1989), provides that "[a]ny substantially affected person may seek an administrative determination of the invalidity of any proposed rule on the ground that the proposed rule is an invalid exercise of delegated legislative authority." Because one of the purposes of the Administrative Procedure Act was to expand public access to the activities of governmental agencies, both trade and professional associations are accorded standing to represent the interests of their injured members. Florida Home Builders Ass'n v. Department of Labor & Employment Sec., 412 So.2d 351, 352-53 (Fla. 1982). Thus a trade or professional association should be able to institute a rule challenge even though it is acting solely as the representative of its members. Id. at 353. To do so the association must demonstrate that a substantial number of its members, although not necessarily a majority, are substantially affected by the challenged rule, that the subject matter of the rule is within the association's general scope of interest and activity, and that the relief requested is of the type appropriate for a trade association to receive on behalf of its members. Id. at 353-54. See also Coalition of Mental Health Professions v. Department of Professional Reg., 546 So.2d 27 (Fla. 1st DCA 1989); Florida Medical Ass'n v. Department of Professional Reg., 426 So.2d 1112 (Fla. 1st DCA 1983); Farmworker Rights Org. v. Department of Health & Rehab. Servs., 417 So.2d 753 (Fla. 1st DCA 1982); Federation of Mobile Home Owners of Fla., Inc. v. Department of Business Reg., Div. of Fla. Land Sales, Condominiums & Mobile *1367 Homes, 479 So.2d 252 (Fla. 2d DCA 1985).
Here the League has satisfied the test for standing. First, it alleged in its petition, and the parties stipulated, that the League is a wholly owned instrumentality of over 380 member cities and charter counties, a great number of which own and operate domestic wastewater treatment facilities that produce wastewater residuals. It is not necessary for the League to elaborate how each member would be personally affected by the proposed rule, because a substantial portion of the League's members will be regulated by the rule. Coalition of Mental Health Professions, 546 So.2d at 28. Second, the parties stipulated that the League is charged to work for the general improvement of municipal government and its effective administration, and to represent its members on statewide issues affecting municipal governments. Because the rule sets forth the procedure for permitting wastewater treatment plants, an activity many of the League's members perform, the proposed rule falls within the League's general scope of interest and activity. Finally, the relief requested, invalidation of the proposed rule, is the type of relief appropriate for an association to receive on behalf of its members. Florida Home Builders Ass'n.
Although the hearing officer erred in concluding that the League did not have standing to participate in the proceeding, we regard the error to be harmless pursuant to Section 120.68(8), Florida Statutes (1989), and therefore affirm, because the fairness of the proceedings and the correctness of the action taken was not impaired by the error. This is so because the League was able to fully participate in the hearing and because the League's arguments were substantially covered by the other appellants to this cause.
Turning to appellants' second issue, we cannot agree that rule 17-640.300 is an invalid exercise of legislative authority. Although the only explicitly stated ground under section 120.54(4)(a) for challenging a proposed rule is that the proposed rule constitutes an invalid exercise of delegated legislative authority, case law, beginning notably with Agrico Chemical Co. v. Department of Environmental Regulation, 365 So.2d 759, 763 (Fla. 1st DCA 1978), cert. denied sub nom. Askew v. Agrico Chemical Co., 376 So.2d 74 (Fla. 1979), has engrafted specific criteria that must be applied in determining whether the rule or proposed rule complies with the enabling statute. The challenger, among other things, is required to show that the requirements of the rule are inappropriate to the ends specified in the legislative act, or that the requirements proposed are not reasonably related to the purpose of the enabling legislation, or that the proposed rule is arbitrary and capricious. See also General Tel. Co. of Fla. v. Florida Pub. Serv. Comm'n, 446 So.2d 1063, 1067 (Fla. 1984); Florida Waterworks Ass'n v. Florida Pub. Serv. Comm'n, 473 So.2d 237, 239-40 (Fla. 1st DCA 1985), review denied, 486 So.2d 596 (Fla. 1986); Department of Professional Reg., Bd. of Medical Examiners v. Durrani, 455 So.2d 515, 517 (Fla. 1st DCA 1984). These criteria have since been codified by the 1987 legislature, amending section 120.52 by adding subsection (8) thereto, defining the term "invalid exercise of delegated legislative authority." See Ch. 87-385, § 2, Laws of Fla. See also Staff of Florida, House Committee on Governmental Operations, "Staff Analysis of Proposed Amendments to Chapter 120, F.S. for House Bill 710 and Senate Bill 608" (1987) (Florida State Archives), explaining that Section 120.52(8)(e), Florida Statutes (1987), relating to the term arbitrary or capricious, "codifies the long established principle that administrative rules cannot be arbitrary or capricious, i.e., unsupported by logic, despotic or irrational." In support of this statement the Staff Analysis refers to the Agrico Chemical Co. and the General Telephone Co. of Florida opinions.
Significantly, the same factors used to test the validity of a statute on the ground that it constitutes a violation of the equal protection clause, in cases in which the rational basis standard is applicable, apply as well to rule challenges at the *1368 administrative trial level. Agrico Chem. Co., 365 So.2d at 762 ([T]he test of arbitrariness to be applied in a proposed rule challenge "is the same for the proposed rule as it would be for a statute having the same effect."). In that the regulation at bar involves an exercise of the police power, we consider it would be helpful to recite the following language in an opinion expressly relied upon by Agrico:
When a commission promulgates a legislative regulation in the exercise of the police power delegated to it by the legislature, it is subject to the same test as to reasonableness and the basic facts justifying the regulation as would be applied if the legislature had enacted the regulation as a statute. As stated in Crescent Cotton Oil Co. v. State of Mississippi, 1921, 257 U.S. 129, 137, 42 S.Ct. 42, 44, 66 L.Ed. 166:
"* * * [A]ny classification adopted by a state in the exercise of this [police] power which has a reasonable basis, and is therefore not arbitrary, will be sustained against an attack based upon the equal protection of the laws clause of the Fourteenth Amendment, and also that every state of facts sufficient to sustain such classification which can be reasonably conceived of as having existed when the law was enacted will be assumed."
Florida Citrus Comm'n v. Owens, 239 So.2d 840, 848 (Fla. 4th DCA 1969) (citations omitted), cert. denied, 242 So.2d 873 (Fla. 1971).
Stated in another way, the constitutional requirement of equal protection of the laws does not inhibit the legislative power in securing the health, safety, morals, and general welfare of the public, and a classification enacted by the legislature for such purposes will not be annulled by the courts unless it is wholly without a reasonable or practical basis, and therefore purely arbitrary. See, e.g., State ex rel. Lawson v. Woodruff, 134 Fla. 437, 184 So. 81 (1938); State ex rel. Bennett v. Lee, 123 Fla. 252, 166 So. 565 (1936); Noble v. State, 68 Fla. 1, 66 So. 153 (1914). Accordingly, it is helpful to examine cases in which the constitutional validity of a statute has been challenged on the ground that it constitutes a violation of the equal protection clause.
In Pinillos v. Cedars of Lebanon Hospital Corp., 403 So.2d 365, 367 (Fla. 1981), the supreme court rejected a constitutional challenge to Section 768.50, Florida Statutes (1979), the Collateral Sources of Indemnity Act, holding that it did not violate the equal protection clause of the Florida and Federal Constitutions. In so doing, the court applied the rational basis test, because no suspect class was implicated. Consequently, to sustain the statute all that was required was a showing that it bore a reasonable relationship to a legitimate state interest. The burden was therefore placed on the challenger to prove that the statute was not supported on any reasonable basis or that it was arbitrary and unreasonable.
In that the federal definition of the rational basis test is applicable to Florida's equal protection clause, Osterndorf v. Turner, 426 So.2d 539, 543 (Fla. 1982), we turn to the federal sector and examine particular cases in order to determine how the test has there been applied. In McGowan v. Maryland, 366 U.S. 420, 425-26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961), the United States Supreme Court observed that the equal protection clause is "offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective," and that a state's discriminatory actions "will not be set aside if any state of facts reasonably may be conceived to justify it." (Emphasis added.) This standard has been termed the "some reasonable basis" standard. See Sasso v. Ram Property Management, 431 So.2d 204, 213 (Fla. 1st DCA 1983), approved, 452 So.2d 932 (Fla.), appeal dismissed, 469 U.S. 1030, 105 S.Ct. 498, 83 L.Ed.2d 391 (1984). Although, as noted in Sasso, there had previously been some confusion resulting from certain United States Supreme Court decisions regarding whether the "some reasonable basis" standard or the "substantial relationship" standard is now the appropriate test to gauge the validity of a statute when challenged on equal protection *1369 grounds, the rule is now clear that if no suspect or quasi-suspect classes are involved, and social or economic regulations are at issue, the proper test is the reasonable or rational basis standard. United States R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 176-77 n. 10, 101 S.Ct. 453, 460 n. 10, 66 L.Ed.2d 368, 377 n. 10 (1980).
Thus, "[i]f the classification has some `reasonable basis,' it does not offend the Constitution simply because the classification `is not made with mathematical nicety or because in practice it results in some inequality.'" Id. at 175, 101 S.Ct. at 459, 66 L.Ed.2d at 376 (quoting Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161-62, 25 L.Ed.2d 491, 501-02 (1970)). It also appears that the "some reasonable basis" standard, as originally set forth in Dandridge, and reaffirmed in Fritz, is the proper basis for deciding whether a challenged statute survives the rational basis standard under the Florida Constitution. See Sasso, 431 So.2d at 216.
Consequently, as long as the classificatory scheme chosen by the legislature rationally advances a legitimate government objective, the courts will disregard the methods used in achieving the objective, and the challenged enactment will be upheld. Schweiker v. Wilson, 450 U.S. 221, 235, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186, 198 (1981). Stated in another way, a classification will not be overturned "`unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that the [governmental] actions were irrational.'" Gregory v. Ashcroft, 501 U.S. ___, ___, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410, 430 (1991) (quoting Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171, 176 (1979)).
Florida courts have not only applied the rational basis test in their constructions of Florida Statutes, see Vildibill v. Johnson, 492 So.2d 1047 (Fla. 1986); Markham v. Fogg, 458 So.2d 1122 (Fla. 1984); Loxahatchee River Environmental Control District v. School Board of Palm Beach County, 496 So.2d 930 (Fla. 4th DCA 1986), approved, 515 So.2d 217 (Fla. 1987), but have applied it as well to rule challenge proceedings. See Marine Fisheries Comm'n v. Organized Fishermen of Fla., 503 So.2d 935, 938 (Fla. 1st DCA), review denied, 511 So.2d 999 (Fla. 1987); Department of Professional Reg., Bd. of Professional Eng'rs v. Florida Soc'y of Professional Land Surveyors, 475 So.2d 939, 941 (Fla. 1st DCA 1985). For example, if an enabling statute, as here, simply states that an agency may "make such rules and regulations as may be necessary to carry out the provision of this act," the regulations promulgated thereunder will be sustained as long as they are reasonably related to the purposes of the enabling legislation, and are not arbitrary or capricious. Florida Waterworks Ass'n, 473 So.2d at 239-40 (quoting General Tel. Co. of Fla. v. Florida Pub. Serv. Comm'n, 446 So.2d 1063, 1067 (Fla. 1984)).
Indeed, the principle applied in rule challenge proceedings that an agency's interpretation of a statute need not be the sole possible interpretation, or even the most desirable one but need only be within the range of possible interpretations, Department of Professional Regulations, Board of Medical Examiners v. Durrani, 455 So.2d 515, 517 (Fla. 1st DCA 1984), is merely a logical corollary of the rule often applied to determine the constitutional validity of a statute challenged on the ground that it offends the equal protection clause: that a statutory classification will not be invalidated under the rational basis test simply because it is not the best possible method, or the least burdensome for achieving the legislative purpose, or because there are other means available to obtain legitimate objectives. Schweiker, 450 U.S. at 235, 101 S.Ct. at 1083, 67 L.Ed.2d at 198.
Turning to the proposed rule at issue, our standard of review at the appellate level is different from that at the hearing level, requiring us to determine whether the hearing officer's findings are supported *1370 by competent, substantial evidence.[2]Agrico, 365 So.2d at 763. See also Adam Smith Enters. v. Department of Envtl. Reg., 553 So.2d 1260, 1273-74 (Fla. 1st DCA 1989). It is nonetheless essential, in carrying out our review responsibilities, to decide whether the correct standard was applied at the rule challenge proceeding. We have no difficulty in deciding that the evidence submitted in support of the rule at bar was appropriate in form to the nature of the issues involved, Bowling v. Department of Insurance, 394 So.2d 165, 171 (Fla. 1st DCA 1981), and therefore met the highly deferential reasonable basis standard. Rule 17-640.300, in our judgment, was adopted pursuant to the broad statutory powers which it was designed to implement. We consider that the hearing officer, under the circumstances, correctly determined that the proposed rule was both appropriate to the ends specified in the enabling legislation and that the requirements proposed therein were reasonably related to the purpose of the enabling legislation.
Rule 17-640.300 makes a wastewater treatment facility liable for proper disposal of its domestic wastewater residuals unless it can demonstrate that it delivered a residual that meets the chemical criteria and appropriate stabilization requirements, and that the disposer has legally agreed in writing to accept responsibility for proper disposal. The adoption of such a rule is authorized by various statutory provisions, including among others, Sections 403.061[3] and 403.704, Florida Statutes (1989). Section 403.061 empowers the Department of Environmental Regulation to control and prohibit pollution of the air and water and to promulgate rules and regulations therefor, and section 403.704 authorizes DER to develop and implement a solid waste management program. See also §§ 403.062, .087, .088, and .707, Fla. Stat. (1989).
Certainly the requirements of the rule are appropriate to the ends specified by the legislature. The rule requires the wastewater treatment facility to be responsible for proper disposal of its residuals, a known source of pollution both to the air and groundwater. Pollution, including the disposal of wastewater residuals, is an activity requiring strong police regulation to protect public interests. Department of Envtl. Reg. v. Goldring, 477 So.2d 532, 534 (Fla. 1985); § 403.021(5), Fla. Stat. (1989). In areas of activity requiring strong police regulation to protect public interests, strict liability may be imposed upon persons otherwise innocent but standing in responsible relation to a public danger. Division of Pari-Mutuel Wagering, Dep't of Business Reg. v. Caple, 362 So.2d 1350, 1355 (Fla. 1978). See also Evans Packing Co. v. Department of Agric. & Consumer Servs., 550 So.2d 112 (Fla. 1st DCA 1989). Indeed, in cases in which a regulation is necessary for the protection of the general welfare, morals, and safety of the public, it is not essential that a specific statutory standard be expressly stated. In such situations the courts will apply a standard of reasonableness. North Broward Hosp. Dist. v. Mizell, 148 So.2d 1, 4 n. 11 (Fla. 1962). Therefore, it follows that the requirements of rule 17-640.300 regarding a wastewater treatment facility's liability for proper disposal of its residuals are appropriate to the ends specified under chapter 403.
The record moreover clearly shows that more accountability was needed in the area of residual disposal. Because wastewater treatment facilities are the producers of residuals, it cannot be said that the rule is not reasonably related to the purpose of the enabling statute: controlling and abating pollution.
Appellants' third issue was directed toward the sufficiency of the economic impact statement (EIS) provided by DER. Substantial compliance, not perfection, *1371 is all that is required of the EIS. Department of Health & Rehab. Servs. v. Wright, 439 So.2d 937, 940 (Fla. 1st DCA 1983). The statement is sufficient if it addresses all areas required by section 120.54(2)(b), even though the estimates may be subject to debate. Florida Waterworks Ass'n v. Florida Pub. Serv. Comm'n, 473 So.2d 237, 247 (Fla. 1st DCA 1985), review denied, 486 So.2d 596 (Fla. 1986). It is moreover not necessary for an agency to speculate on estimates for matters it cannot predict. Department of Ins. v. Insurance Servs. Office, 434 So.2d 908, 929-30 (Fla. 1st DCA 1983) (Robert P. Smith, Jr., J., dissenting, with whom Joanos, J., concurs), review denied, 444 So.2d 416 (Fla. 1984). In the case at bar, the EIS addressed all areas required by the statute, and while it did not include an estimate for the cost of violations by the wastewater treatment facilities, any such estimate would have been speculation and therefore not required. Because the EIS substantially complies with section 120.54, we find no ground for reversal under this issue.[4]
To summarize, although we conclude that the hearing officer erred by denying standing to the League, we hold that such error was harmless. We further hold that Florida Administrative Code Rule 17-640.300 is a valid exercise of legislative authority, and that the EIS submitted with the rule meets the requirements of section 120.54(2). The motion for rehearing is denied, and the remaining motions filed by appellants and amici for rehearing en banc and for certification are similarly denied.
AFFIRMED.
WEBSTER, J., concurs, participating upon assignment after oral argument in substitution for NIMMONS, J.
ZEHMER, J., dissents without written opinion.
NOTES
[1] Section 120.54(4), Florida Statutes (1989).
[2] This standard is less deferential than the arbitrary-and-capricious standard applicable to quasi-legislative rulemaking proceedings pursuant to Section 120.54(3)(a), Florida Statutes. Adam Smith Enters v. Department of Envtl. Reg., 553 So.2d 1260, 1271-72 (Fla. 1st DCA 1989).
[3] See particularly subsection (7) of this section, which authorizes DER to "[a]dopt, modify, and repeal rules and regulations to carry out the intent and purposes of this act."
[4] We note that under the 1992 amendment to section 120.54(2)(b), an EIS may not have even been required. See Ch. 92-166, § 4, Laws of Fla.