# CARR v FLORIDA PAROLE AND PROBATION COMMISSION
## Case No. 86-3506R
State of Florida, Division of Administrative Hearings
December 19, 1986

## APPEARANCES OF COUNSEL

**Richard A. Belz,** Florida Institutional Legal Services, Inc., for petitioner.

**Kurt Ahrendt** for respondent.

## OPINION

ARNOLD H. POLLOCK, Hearing Officer.

### FINAL ORDER

Consistent with the Amended Notice of Hearing furnished to the parties by the undersigned on September 19, 1986, a hearing was held in this case before Arnold H. Pollock, a Hearing Officer with the Division of Administrative Hearings at the Florida Correctional Institution, Lowell, Florida, on October 20, 1986. The issue for consideration was whether Respondent's Rule 23-21010(4)(a)2b, *Florida Administrative Code,* is a valid exercise of delegated legislative authority.

### BACKGROUND INFORMATION

On September 3, 1986, Richard Belz, counsel for the Petitioner herein, served a copy of the Petition for Administrative Determination on counsel for the Respondent in which he attacked *Florida Administrative Code* Rule 23-21.10(4)(a)2b which permits the Florida Parole and Probation Commission, (Commission), to aggravate a Presumptive Parole Release Date, (PPRD), under certain circumstances. Petitioner claims that the rule in question constitutes an invalid exercise of delegated legislative authority because it is arbitrary and capricious in that it used untrained personnel in arriving at a diagnosis of alcohol abuse when the proper diagnosis may well be alcohol dependence. Petitioner also claims that the rule is arbitrary and capricious in that the Commission does not always utilize alcohol abuse as an aggravating factor and does utilize it merely to achieve and justify a predetermined result.

The same day the petition was filed with the Commission, it was forwarded to the Director of the Division of Administrative Hearings for the appointment of a Hearing Officer and the case was assigned to the undersigned on September 8, 1986.

During a telephone conference held on September 11, 1986, the parties agreed to a continuance in the hearing until October 20, 1986. On September 23, 1986, Respondent filed a Motion to Dismiss the petition which was denied by the Hearing Officer.

At the hearing, Petitioner presented the testimony of Ernest Guy Revell, Vice-Chairman of the Commission; Ray E. Howard, Administrator of the relocation section of the Commission; and Dr. Roger A. Goetz, Director of the Florida Medical Association's impaired physician program. Petitioner also introduced Petitioner's Exhibit 1-13. Respondent presented the testimony of Charles H. Lawson, a Commis-

sioner; the Petitioner, Clara H. Carr; and Commissioner Maurice G. Crockett, and introduced Respondent's Exhibits A through E and F.

Subsequent to the hearing, the parties presented proposed findings of fact which have been evaluated and ruled upon in the appendix to this Final Order.

## FINDINGS OF FACT

1. At all times pertinent to the issues herein, Petitioner, Clara Carr, was an inmate at the Florida Correctional Institution.

2. The Respondent Commission is responsible for establishing Presumptive Parole Release Dates (PPRDs) for all inmates in the custody of the State of Florida who meet the requirements of Section 947.173, *Florida Statutes.* Petitioner met all of the requirements of that section and was entitled to a PPRD initial interview on November 25, 1985.

3. In the establishment of a PPRD, the inmate is first interviewed in the field by an examiner who evaluates and scores the inmates on a form which is then sent to the full Commission which also scores the individual based on salient factors which may be aggravated or mitigated because of other permissible factors. If the Commission decides to assess an aggravating factor, the amount of time is discretionary within certain time limits.

4. Initially, the Commission looks at the offense and its severity in setting a salient factor score and uses that as a beginning. Then the jail time prior to the admission to the Department of Corrections facility, if any, is removed and the pre and post sentencing report, the interview, and other reports of public hearings and the like are evaluated as aggravating or mitigating factors. The aggravating factors are generally set out in the rule in question here but the list in question in the rule is not all inclusive. The Commission may consider anything which can be founded on a valid or reasonable connection to the action taken.

5. Petitioner was interviewed by Commission staffers on November 25, 1985, for the purpose of setting her PPRD. By action of the Commission at a meeting held on January 8, 1986, the PPRD was established to be December 28, 1988. This date was arrived at by initially utilizing the maximum matrix of 32 months set for her offense and the conditions thereof aggravated by a history of alcohol abuse listed in the pre-sentence investigation; the psychological interview; and the admissions summary, for which the Commission added an additional 36 months. When that time was

applied to the commencement of sentence, April 28, 1983, the PPRD was established as stated above.

6. On January 30, 1986, through counsel, Petitioner requested a review of PPRD alleging that the rule under which the Commission had aggravated her PPRD (Rule 23-21.10(4)(a)2b) is invalid. Petitioner claimed that alcoholism is a treatable illness and it is improper and illegal to aggravate on such grounds. Petitioner cited Article 1, Section 2 of the Florida Constitution; Section 396.022(1), *Florida Statutes;* 42 USC 4541(a)(8), and other authorities.

7. A commission meeting was held on February 26, 1986, to consider Petitioner's request for review of her PPRD. The Commission did not change it holding that the rule in question was appropriate and provided for the aggravation of a PPRD for history of an alcohol abuse. Consequently, the PPRD remained at December 28, 1988.

8. In the pre-sentence investigation conducted by officials of Marion County, Florida, in August, 1983, which was presented to the Judge at the time Petitioner was sentence and which was considered by the Commission at the time the PPRD was established, Petitioner is alleged to have indicated that she had been drinking very heavily for several hours the night of the incident and does not remember any of the circumstances surrounding it. She described herself as a "weekend drinker" of beer and liquor and denies the use of any drugs, but it is significant to note that her nickname in the community is "Boozie." Though Petitioner denied having a prior arrest record, the records of the Marion County Sheriff's Office and the Ocala Police Department indicate a series of arrests going back to January, 1975, five of six of which relate to aggravated battery or assault and battery, in some cases with a deadly weapon. During the admissions examination conducted at the time Petitioner entered FCI, she indicated that she did not drink, but also that she is a weekend alcoholic. The evaluator was of the opinion that her alcoholic involvement was more than just weekends involvement and in addition, she was diagnosed by the institutional psychiatrist as having an adjustment disorder. She was described as being very aggressive and one who would probably display aggressive behavior if placed under too much stress.

9. The Commission is required, under the provisions of Sections 947.16 and 947.172, *Florida Statutes,* to provide the Petitioner

with a PPRD and to compute that date according to objective parole guidelines outlined in Section 947.165, *Florida Statutes.*

10. In determining the PPRD, the Commission may use aggravating or mitigating circumstances but these circumstances must not be duplicative of the severity of the offense behavior or the salient factor score arrived at pursuant to Sections 947.1651 and 947.1722, *Florida Statutes.*

11. The Commission was delegated rulemaking power by Section 947.07, *Florida Statutes.*

12. Consistent with the authority, the Commission developed parole guidelines outlined in Rule 23-21.10, *Florida Administrative Code.* The aggravation factor which is the subject of the instant challenge is contained in Rule 23-21.10(4)(a)2b, *Florida Administrative Code.*

13. This Petitioner is a 28-year old female serving her first felony conviction from Marion County, Florida, for aggravated battery with a dangerous weapon having been sentenced to a term of 10 years (less 81 days jail time), on July 18, 1983. She was received at FCI on July 22, 1983, and presently has a maximum release date of April 25,1993.

14. Under the provisions of the rule cited above, the Commission may aggravate a Parole Release Date if the inmate has demonstrated a history of alcohol or drug abuse. The Petitioner's PPRD was aggravated for that reason because the history of alcohol abuse relates to negative behavior on her part. This history of alcohol abuse alone would not be sufficient to cause the Commission to aggravate a PPRD. Here, however, there was a showing of increased risk on the part of Petitioner as a potential parolee. The Commission felt that she was a risk due to the interrelation of her history of bad behavior and alcohol consumption. Even though the rule in question does not specifically refer to aberrant behavior as related to the alcohol abuse as grounds for aggravation, it is nonetheless implied therein and a logical and reasonable extension and interpretation of the rule.

15. The Commission does not specifically consider that the alcohol abuse may stem from a medical condition. It deals with results or behaviors regardless of the cause of the behavior. It is not the function of the Commission to deal with the cause of the problem, but to evaluate each inmate for parole on the basis of that inmate's specific situation. There is no formula for evaluation but instead, it is the best collective judgment of the risk

164

factors in the individual case as arrived at by the members of the Commission. The matrix time ranges are limits of foundation times and the other factors are add-ons or subtractables. If there were not so; if there were to be no independence of thought and judgment by members of the Commission; there would be no need for people to make up the Commission and to make the decision. This function could be performed by a machine on the basis of factors fed into it.

16. Petitioner contests the validity of the rule on the basis that it does not consider the fact that alcoholism is a sickness rather than a mental condition. At the time the rule complained of was drafted, the Commission hired Florida Research Center, Inc. as consultants to help come up with appropriate matrices and salient factors which included alcohol and drug abuse. In addition to this, a survey was conducted in 1978 of 10 individuals including the Commissioners as to how certain factors should be rated. Five of the ten parties questioned rated drug and alcohol abuse as number one. Two others rated those conditions as second in importance. Further, the Commission was provided with the professional literature considered by authorities at the time the preponderance of which supported these evaluations.

17. It is clear that the legislative intent behind Chapter 947, *Florida Statutes,* was to have rules in effect for the Commission to use in establishing PPRD which call for the use or objective parole criteria within certain limits. Under the statute, the rule need not specify a number of months or a range of months of aggravation due to alcohol abuse.

18. The Commission has not suggested to Petitioner that she seek treatment for her alcohol abuse nor has it offered to reduce her sentence if she should do so. It would be inappropriate for the Commission to do this as a part of a determination but it would not be inappropriate for the interview staff to suggest it as a matter of course.

19. It is not the role of the Commission to suggest the course of an inmate's confinement or rehabilitation. That subject is within the purview of the Department of Corrections. The Commission's function is to assess the propriety of returning the inmate to society and the issue to be decided by the Commission at its hearing is whether the inmate constitutes a threat to the community or not.

20. In fulfilling this function, the Commission uses the Department

**165**

of Corrections to prepare mental and medical examinations of the inmate and to produce reports. If the evidence indicates there is a mental health problem, the Commission considers it.

21. In early 1984, the Commission published two policy letters dealing with the Commission operations; Numbers 4.17 and 4.20, both of which relate to medical or mental health status reports regarding inmates. The first, dealing with the request for these reports indicate that if the Commission requires an up-to-date report in these areas it may request it and in those cases where a hearing examiner for the Commission feels that the Commission would need it, it is the responsibility of the examiner to request it so that it is available for the Commission to consider at the time the inmate's PPRD is considered. Number 20 deals primarily with the language to be used by the Commission in citing a mental health status report as a source of new information used to alter the PPRD. Neither of these policy letters are necessarily pertinent unless it is considered that alcohol abuse, the language used in the rule in question here, is equated to alcohol dependency and alcohol dependency is considered either a mental health or medical condition. It cannot be found here that alcohol abuse, which may be a single incident of improper consumption of alcohol, is tantamount to or equates to alcoholism or alcohol dependency which may be a mental or physical condition.

22. The term, "aggravation", is defined in Rule 23-21.02(1) as:

. . . to exceed the matrix times ranges upper month limit.

Alcohol abuse is not defined in the rule or anywhere else for specific use by the Commission. It is basically left up to each Commissioner to apply his interpretation of the term to the facts before him or her and most Commissioners have a common understanding of what the terms means.

23. The Commission considers there is a medical difference between alcohol abuse and alcohol dependence for setting PPRDs. The determination of whether to use a history of alcohol abuse may be based on whether the abuse played a part in the current offense or not. If so, the Commission generally will utilize the incident in its deliberations. If not, then it may not, but the issue of whether to use it as either aggravation or mitigation is discretionary with the Commission. Once it is determined to use alcohol abuse as aggravation in establishing a PPRD, then the amount of aggravation and time to be added is also based on the

individual judgment of each Commissioner based on his or her evaluation of the degree of risk involved to the general public by the inmate. In arriving at this additional time, the Commission has a range within which it may assess a period of months, but there is no formula. In substance, the Commission is making an assessment of the risk—not a medical diagnosis and the issue is whether, because of that demonstrated alcohol abuse, the inmate constitutes a greater risk to the public if paroled. If so, then additional months are added on. If not, they are not.

24. In that connection, expert evidence tends to indicate that abusers of either alcohol or drugs have a lesser chance of success than those who do not abuse. Alcohol addiction does generally lead to poor behavior and it is often a condition of parole that the inmate not drink to excess. Consequently, if a demonstrated alcohol abuser does drink to excess, the likelihood of his behavior becoming inappropriate again is high, but in addition, he will most likely be in violation of the conditions of his probation. It is again a question of risk assessment by professional judgment on an individual basis.

25. Some experts define alcohol abuse as "a voluntary excess or inappropriate use of alcohol", whereas alcoholism is "involuntary." An abuser is not necessarily an alcoholic and trained medical expertise differentiates between alcoholism and alcohol abuse. Because of the fact that alcohol abuse is voluntary, some experts believe there is no reason to extend a prison term on the basis of alcohol abuse if the extension does not result in treatment for the behavior.

26. Petitioner introduces the Commission's actions with regard to inmate Nicky Berkart, where the Commission declined to utilize that inmate's alcohol abuse to aggravate his PPRD as evidence of the inconsistency of treatment of this factor. Mr. Berkart's situation is not comparable, however, to the issue here.

27. None of the documentation considered by the Commission here was prepared by a doctor or medical professional with the exception of the psychologist's interview, but there is no indication that it need be. If the Commission had decided that additional medical or professional evaluation was necessary and pertinent, it could have requested it.

28. What must be recognized is that an inmate has no right to parole. The sentence imposed by the court generates an expiration of sentence date (EOS) at which time the inmate will be

**167**

released unless he or she has committed additional offenses. Parole, which is release prior to expiration of sentence, is a privilege and if no parole is granted, the inmate will still get out at the EOS less gain time. Consequently, since nothing extends the sentence, denial of parole does not increase the penalty.

29. The Commission may and does make abstinence from alcohol, or the use of antabuse, a condition of parole. Neither, however, is a guarantee that the individual will refrain from using alcohol. The evidence presented by Respondent indicates that it is not at all unusual for a parolee to commit offenses while under the influence of alcohol. Forty to fifty percent of all revocations of parole result from some sort of substance abuse. Many of those parolees have a history of alcohol abuse. Therefore, a history of alcohol abuse would appear to be a negative incident of parole success.

30. The aggravating factor in this situation is not that the inmate has the medical problem of alcoholism, but that the history of alcohol abuse shows that the inmate is not a good parole risk. It is generally a safe statement that people in prison who abuse alcohol are not a not a risk to society. Those who are released from prison with a demonstrated propensity to abuse alcohol are.

31. In making this evaluation, the Commission is not, as was indicated previously, bound by any strict formula. Whatever qualification is applied, however, it must be applied on an individual basis and not across the board. Each Commissioner tailors his recommendation on what he knows about the individual before him. Based on the information provided, plus whatever information is requested as appropriate, an individual conclusion is drawn by each member of the Commission. These then are evaluated and a Commission vote is taken which results in the establishment of the PPRD.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the parties hereto and the subject matter hereof. Section 120.57(1), *Florida Statutes.*

Petitioner challenges Respondent's Rule 23-21.10(4)2b on the basis, that it constitutes an invalid exercise of delegated authority because it is arbitrary and capricious. Petitioner's reasons for claiming arbitrariness and capriciousness include that since the American Psychiatric

Association considers alcohol abuse and alcohol dependence (alcoholism) much one and the same, the use by the Commission of personnel who are not trained medical or mental health professionals to reach the diagnosis is improper. Petitioner claims the Commission makes no differentiation between the medically accepted terms "alcohol abuse" and "alcohol dependence" (alcoholism) when it uses the term alcohol abuse. Petitioner further claims that since alcohol abuse is, in fact, an alcohol dependence and another name for alcoholism, the Commission would be forbidden to utilize this condition to aggravate a PPRD because, as a recipient of federal financial assistance, it cannot subject handicapped individuals to discrimination. She goes on to claim that since the Florida Legislature has determined in Section 396.022(1), *Florida Statutes,* that alcoholism is recognized as an illness or disease that requires attention and treatment through health and rehabilitative services and is therefore an illness and a handicap, to use this handicap to aggravate a PPRD would be illegal. As further discussed below, this argument is without merit.

Petitioner also claims that the rule in question is arbitrary and capricious because the Commission does not always use alcohol abuse as an aggravating factor even when it has been identified as an existing condition and instead uses it only to achieve a result it has predetermined and which it needs to justify. In support of this allegation, Petitioner relies on a case involving Nicky Berkart, but this is not a valid comparison in that the overwhelming weight of the evidence indicates that cases coming before the Commission are evaluated on the basis of the facts and circumstances relating to that individual case and there is insufficient evidence to indicate the rationale or basis for action of the Commission in the Berkart case.

In her third attack on the rule in question, Petitioner claims it is invalid as arbitrary and capricious because the requirements of the rule are not reasonably related to the purpose of the Objective Parole Guidelines Act of 1978 which called for parole criteria to:

> . . . be designed to give primary weight to the seriousness of the offender's present criminal offense and his past criminal record. In considering the risk of recidivism, practice has shown that the best predicator is his prior record.

Petitioner contends that under the terms of the 1978 Act, the Commissioner must adopt rules specifying the amount of months, (or at least a range of months) it can utilize to aggravate a PPRD for alcohol abuse and the Commission has not adopted any such rule. This, too is without merit.

**169**

Ms. Carr cites *Florida Institutional Legal Services, Inc. v. Florida Parole and Probation Commission,* 391 So.2d 247, 249 (Fla. 1st DCA 1981) as indicating that the need for such rule is long overdue and the failure of the Commission to amend the rule therefore renders the existing rule arbitrary and capricious. The evidence cited above would tend to disprove the allegation, however.

In her final attack on the rule, Petitioner claims that it is arbitrary and capricious in that since alcohol abuse (alcoholism) is a treatable medical or psychological condition, and prison is no "cure" for this or any other disease or mental health problem; since the Commission has not suggested that the inmate receive treatment for her condition; nor has it agreed to reduce the aggravation added to her PPRD for alcohol abuse if she does receive treatment; the Commission is, in essence, extending Petitioner's length of time in prison because of her status as an alcohol abuser when she may be suffering from alcoholism. In connection with this thrust, Petitioner claims there is no factual proof or other evidence that her alcohol abuse will lead to the commission of further crimes or result in crimes for which Petitioner has not been convicted and that it is improper for the Commission to aggravate a PPRD on the basis of idle speculation. Aside from being contrary to the weight of the evidence, this argument is both specious and ingenuous.

No issue has been raised as to Petitioner's standing to bring this proceeding. It is apparent that her substantial interests are affected by the challenged rule in that it has been applied in determining her PPRD and thereby affects future parole decisions in her case. Under certain circumstances, a prisoner is entitled to seek a review of the rule under the provisions of Section 120.56, *Florida Statutes.*

Section 947, *Florida Statutes,* provides generally that inmates are entitled to an initial interview conducted by a hearing examiner of the Commission at certain times for the purpose of arriving at a recommendation as to the inmate's PPRD. By statute, such date is to be based on the objective parole guidelines and "any other competent evidence relevant to aggravating and mitigating circumstances." A Commission panel acts on the recommendation of the hearing examiner to thereafter establish the PPRD and the inmate thereafter may request review of that date. Subsequent hearings are required on a yearly basis for the establishment of an "Effective Parole Release Date" which is the actual parole release date as determined by the PPRD, satisfactory institutional conduct, and an acceptable parole plan.

Respondent has implemented the foregoing statutory provisions by

170

rules set out in the *Florida Administrative Code* and in addition specified aggravating and mitigating factors are outlined in Rule 23-21.10 which may lead to a decision fixing a PPRD either above or below the matrix time frame. The rule in question, at 23-21(4)(a)2b states:

Reasons related to likelihood of favorable parole outcome, negative indicants of parole prognosis:

. . . . . . . . . . .

b. The inmate has a history of alcohol or narcotics abuse.

Petitioner does not claim that the Commission cannot require special conditions of parole for victims of alcoholism or alcoholic abuse including total abstinence from alcoholic beverages, active participation in alcohol abuse programs, or the administration of anti-alcohol drugs such as antabuse. She contends only that the rule which allows the Commission to aggravate and thereby extend her PPRD beyond the matrix time range set for her offense is arbitrary and capricious and thereby an invalid exercise of delegated legislative authority.

It well may be that from a medical standpoint, alcoholism is a disease, either physical or mental, which can be effectively treated and controlled. That this may be so does not, however, alter the fact that an individual who abuses alcohol is, in fact, and has been shown to be, a substantially greater risk to society upon release from prison because of the demonstrated instances of alcohol abuse. What the rule is basically saying is that alcohol abuse is an indicant of the likelihood of the unsuccessful parole experience and a rule which recognizes this and places within the authority of the duly appointed Commissioners the authority to evaluate this condition as a factor in granting not a right but a privilege, cannot reasonably be held to be arbitrary or capricious. Rather than be an invalid exercise of delegated legislative authority, it would appear more to be a completely appropriate and responsible exercise of this authority. The Commissioners are confronted with individuals who have already demonstrated substantial aberrant and anti-social behavior by committing offenses which result in their incarceration within the Department of Correction's prison system. These individuals are not committers of mere misdemeanors but are convicted felons. It is certainly not reasonable nor arbitrary and capricious to examine the potential of these individuals for a safe and successful return to the public sector before releasing them into the public.

The validity of regulations normally will be sustained so long as they are reasonably related to the purpose of the enabling legislation and are

not arbitrary or capricious. In *Agrico Chemical Co. v. Department of Environmental Regulation,* 365 So.2d 759 (Fla. 1st DCA 1978), the court stated:

> A capricious action is one which is taken without thought or irrationally. An arbitrary decision is one not supported by facts or logic, or despotic . . . The requirement that a challenger has the burden of demonstrating agency action to be arbitrary or capricious is a stringent one indeed. . . .

Here, Petitioner has not succeeded in meeting her "stringent" burden. To paraphrase an old song, "Saying won't make it so." To the contrary, the evidence presented at the hearing both by Petitioner and Respondent shows that Rule 23-21.10(4)(a)2b, *Florida Administrative Code,* is a reasonable and logical interpretation of the legislative intent and statutory direction in establishing PPRDs. Far from being without thought or irrational, the use of a demonstrated incident of aberrant behavior, even if behavior subject to medical treatment, as a reason for deferring the release of a convicted felon back into society, based on valid and demonstrated evidence of the unlikelihood of success of an alcohol abuser in the parole setting, is not only good thinking but quite rational. To utilize a proscription in the terms of parole against consumption of alcohol would not provide the same degree of risk management as would a delay in release. The inmate has already demonstrated an unwillingness or inability to conform to the rules and requirements of society and to add a new rule without some reasonable expectation of success is itself capricious and whimsical.

Indeed, there is a valid basis for the rule in question and it is, therefore, determined that Petitioner has failed to establish that Respondent's Rule 23-21.10(4)(a)2b, *Florida Administrative Code,* is an invalid exercise of delegated legislative authority and it is, therefore,

ORDERED THAT, Clara Carr's Petition for Administration Determination is dismissed.

DONE and ORDERED this 19th day of December, 1986, at Tallahassee, Florida.