507 So.2d 702 (1987)
Paul STATEN, Appellant,
v.
Charles COUCH, Appellee.
No. BR-191.
District Court of Appeal of Florida, First District.
May 14, 1987.
*703 John D. Carlson of Gatlin, Woods, Carlson & Cowdery, Tallahassee, for appellant.
C. Graham Carothers and E. Bryan Wilson of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellee.
WENTWORTH, Judge.
The final Leon County School Board order challenged by appellant Staten found his son Eric ineligible to participate in co-curricular activities until "completion of one full year at Godby High School." The order was entered following appellant's pursuit of both grievance procedures and evidentiary hearings under section 120.57, Florida Statutes. We reverse because subsection (6) of Board Rule 6GX37-3.02,[1] by its terms and as applied in the context of the record evidence, arbitrarily denied appellant's right to establish eligibility on any rational basis under due process standards recognized in similar circumstances. Bertens *704 v. Stewart, 453 So.2d 92 (Fla. 2d DCA 1984); Lee v. FHSAA, 291 So.2d 636 (Fla. 3d DCA 1974).
The Board, through appellee Couch as superintendent of public instruction, vigorously argues issues of standing, mootness, absence of a right to any hearing, and that subsections (4) and (6) "must stand or fall together." Although the issues are close, we find those arguments without force in the light of the record establishing appellant's diligent good faith pursuit of all remedies, and the Board's concession with respect to the absolute discretion vested by the challenged rule, as follows:
Rule 6GX37-3.02(6) is crystal clear ... that 1) no student not attending his zoned school can participate in co-curricular activities without a waiver from the former principal; 2) the former principal can prevent co-curricular participation for the full four years the student is in high school. The student of average intelligence is thus on notice that he may not participate in athletics at his new school, if his former principal chooses not to sign the waiver. If a student disagrees with a principal's decision, he is free to follow the grievance procedure followed by appellant and his son.
The inefficacy of hearings accorded appellant is thus clear from the text of the rule and the disavowal of any inferred restraints on exercise of discretion thereunder. They reflect no intention to guide students in predicting or proving eligibility, and no basis upon which appellant could undertake to challenge the denial of a waiver. It is doubly clear from consideration of testimony of the Board's own witnesses, noted below, who effectively conceded the absence of any improper motive for appellant's out-of-zone transfer which might legitimately serve as ground for denying the waiver.
The facts, in summary, are: Appellant and his son, Eric Staten, live in the portion of Leon County zoned for Rickards High School. Eric attended Rickards High School during the 1984-85 and 1985-86 school years. He participated in interscholastic basketball both years. On June 12, 1986 appellant requested Eric's transfer to Godby High School so that he could participate in the R.O.T.C. program there. Godby High School is the only high school in the county with an R.O.T.C. program. The school board on June 16, 1986 approved the transfer. Appellant on June 26, 1986 requested Rickards High School Principal Albert Wanton to sign a so-called "blue card" so that Eric would be eligible to participate in co-curricular activities at Godby High School. Wanton refused to sign the blue card, and at the hearing ultimately held Wanton's testimony was that he refused to sign the card because other principals had refused to sign blue cards for him, Eric was reassigned for academic, not athletic, reasons, and school zoning had resulted in Rickards High School having a dying population, which hurt the school and had professional disadvantages for Wanton. Prior to the beginning of the 1986-87 school year, the Rickards basketball coach contacted appellant and Eric, informing them that Eric could continue to play basketball at Rickards while he attended Godby. Appellant and Eric chose not to exercise that option.
On December 10, 1986 an informal hearing was held, with school board chairman Richard Merrick acting as hearing officer. The testimony revealed no evidence that Eric had been recruited for the Godby High School basketball team. The hearing officer's recommended order was that Eric should be granted eligibility to participate in co-curricular activities at Godby after completion of one calendar year, although he found that the evidence established Eric's reassignment to Godby was made "in order to participate in the R.O.T.C. program." School Board Superintendent Charles Couch, appellee here, submitted the recommended order to the school board, along with his recommendation that Rule 6GX37-3.02(6) be revised to articulate a grievance procedure for students, and to narrow the application of the rule to athletic activities only.[2] The school board on *705 January 5, 1987 accepted appellee's recommendation regarding Eric's eligibility status, but declined to accept the recommendations regarding revisions of the rule. Appellant appealed the board's final order, and responded to a motion to dismiss for mootness filed in this court by alleging that the constitutional issues raised in this appeal are not moot because they are likely to recur, the order could deny eligibility until January 5, 1988, and the order precludes eligibility for all co-curricular activities, not just basketball. This court on June 3, 1987 denied the motion to dismiss.
We conclude that, whether or not the board in its brief correctly classifies co-curricular activities as "third or fourth string on the due process team," the challenged rule was applied in this case within a complex framework of procedures which effectively burdened and obscured not only co-curricular privileges but also academic transfer options which the cited rules purport to govern by fair and objective standards of feasibility. The lack of any such standards, express or implied, for the exercise of discretion vested under the waiver rule renders it incapable of understanding by students and parents, and incapable of application in a manner susceptible of review by grievance or other review procedures.
Reversed and remanded for further proceedings consistent herewith.
SMITH and SHIVERS, JJ., concur.
NOTES
[1] Rule 6GX37-3.02(6), Rules of the School Board of Leon County:

(6) Co-Curricular Activities. Each secondary student not attending his or her zoned school must obtain a written waiver from the principal of the zoned school prior to participation in any co-curricular activity at the out-of-zone school. This shall apply to all reassignments under section (4) of this policy. This waiver shall be irrevocable once made, but the principal of the zoned school has the authority to preclude a student from participating in co-curricular activities at the out-of-zone school for the full four years a student is in high school. (e.s.)
Rule 6GX37-3.02(4), Rules of the School Board of Leon County:
(4) Special Assignments.
(a) The Superintendent in his discretion may assign any student to any school within the county based upon a documented request of any court of competent jurisdiction or by any state agency having jurisdiction, control or supervision of such student.
(b) The School Board may assign any student who requires exceptional child education or other special instruction to such schools or classes as best serve the needs of such student.
.....
(d) Students may be allowed to attend a non-zone school based on hardship, or other reason not otherwise covered by this policy under the procedures set forth in section (5) of this policy. For the purpose of administering this policy, hardship is defined as documented factors that are beyond the student's and parent's control which have a negative impact on the student's education process.
.....
(e) The Board may establish special programs at particular schools which draw upon the entire district for students. In such cases attendance shall be voluntary.
(f) While the Board desires to make all educational programs available to all eligible students, it shall not be grounds for reassignment that a student desires a course given at one school which is not given at the zoned school. A pupil student desiring to take a class at another school shall make it known to the principals of the two schools involved, who shall have no less than one month to see if it is feasible to arrange for the student to attend the other school for the period or periods the class is offered. If the principals are unable to make these arrangements, the student may request a review by the Superintendent... .
[2] The record indicates that, under a Florida High School Activities Association regulation, when a high school student is assigned to an out-of-zone school an official in the county school system must sign a permission form, the "blue card," if the student is to be eligible to participate in co-curricular activities. Leon County School Board Rule 6GX37-3.02(6), which implements the Association regulation, provides that the principal of the school in whose zone the student resides may, by refusing to sign the blue card, preclude a student from participating in co-curricular activities at the out-of-zone school for all four years of high school. Neither the recommended order in this case, nor the final order adopting its factual findings (including "that Mr. Wanton acted within the parameters of Board policy"), negates the appellant's stated position set forth in the order as follows:

(1) That refusal to sign waivers [was] intended by the Florida High School Association to be based on one of three factors:
(a) Recruitment by another school; [b] attempts by students to avoid disciplinary action; or (c) attempts by students to move to superior athletic programs;
(2) That none of the above facts were present in the case of Eric D. Staten; ...