655 So.2d 132 (1995)
Michael CORTES, Taliver Heath, Robert Klepper, and Mohit Ramani, Appellants,
v.
STATE of Florida, BOARD OF REGENTS and Florida Public Interest Research Group, Inc., Appellees.
No. 93-1886.
District Court of Appeal of Florida, First District.
April 25, 1995.
Rehearing Denied June 13, 1995.
*134 Charles Daniel Sikes, P.A., Starke, for appellants.
Robert A. Butterworth, Atty. Gen., Claire D. Dryfuss, Asst. Atty. Gen., Tallahassee, for appellee Bd. of Regents.
Carlos Alvarez of Hopping Boyd Green & Sams, Tallahassee, for appellee Florida Public Interest Research Group, Inc.
BENTON, Judge.
Appellants initiated proceedings under section 120.56, Florida Statutes (1993) by filing a petition to determine the invalidity of a rule. They challenge Florida Administrative Code Rule 6C-7.003(9), which leaves to university presidents the decision whether to "authorize collection of an additional fee for the financing of chartered non-profit public interest research organizations," if certain conditions are met; and confers discretion on university presidents, when collection is authorized, to choose between a "positive or negative checkoff system." Florida Public Interest Research Group, Inc. (PIRG), participated in the rule challenge proceedings as an intervenor urging that the rule be upheld. We affirm the final order denying the petition to determine the invalidity of a rule, except insofar as it creates standardless discretion to choose a "negative checkoff system."

Facts Found Below
On the basis of the parties' stipulation, the final order found the following facts:
1. Petitioners are full-time college students currently enrolled at the Florida State University, a university authorized and funded by the State of Florida and under the direction and control of the State of Florida, Board of Regents. By virtue of the operation of Rule 6C-7.003(9), Florida Administrative Code, promulgated by the State of Florida, Board of Regents, Petitioners have been substantially affected at the time of fee payment for class registration by the use of a negative checkoff method of donation to Florida Public Interest Research Group, Inc. (Florida PIRG) authorized by the before-mentioned rule.

*135 2. Florida PIRG is a statewide student organization with approximately 40,000 members at three universities. Students who pay the fee are members of Florida PIRG. Florida PIRG is an independent, non-partisan, nonprofit organization involved in research, education, writing, publicity, lobbying, and litigation with respect to numerous public issues, including coastal protection from offshore drilling, environmental preservation, consumer protection, hunger and homelessness, voter registration, and an open democratic process.
3. Florida PIRG is incorporated under the laws of Florida, having its principal place of business at 420 East Call Street, Tallahassee, Florida 32301. Florida PIRG's policies are determined by its Board of Directors, which is composed of student representatives from the participating universities. The implementation of these policies is largely in trust of Florida PIRG's professional staff and the students who work with it.
4. Florida PIRG has two basic goals. Florida PIRG's first goal is to involve university students in public affairs so as to broaden their educational experiences and help develop a more sophisticated and active electorate. Florida PIRG accomplishes these goals by giving students the opportunity to participate on every level of its activities, from conducting basic research to formulating organizational policy. A number of students at Florida PIRG's three campus chapters participate actively in Florida PIRG internship programs, all of whom receive academic credit for their work. Florida PIRG's second goal is to work for social and political change as advocated by its membership.
5. The challenged rule is Rule 6C-7.003(9), Florida Administrative Code. This rule provides:
(9) Each university president is empowered annually to authorize the collection of an additional fee for the financing of chartered non-profit public interest research organizations, provided that at least a majority of the students sign a written petition requesting that such a fee be collected.
(a) An additional fee shall be structured only in the form either of a positive or negative checkoff system in the sole discretion of the president as follows:
1. A positive checkoff means the student must designate by initialling or marking a box on the registration or fee card that the student wishes to fund the public interest research group. If a student does not so designate, no fee will be assessed.
2. A negative checkoff means the student must designate by initialling or marking a box on the registration or fee card that the student does not wish to fund the public interest research group. If a student does not so designate, the fee will be assessed.
(b) Any such organizations must maintain a level of collection as set by the university. The university may recover its costs incurred in collecting the fee, providing such costs [do] not exceed 10 percent of the fees collected. The university has no responsibility for the actions or non-actions of such organizations for which it collects fees. Notwithstanding the above, any funding system presently being used by any university which was formulated in accordance with this section prior to this amendment shall remain valid but shall be changed to comply with this section, as amended, prior to the Fall semester of 1983.
6. The specific authority for the challenged rule is Sections 240.209(1), (3)(d), and (q), Florida Statutes.
7. The specific laws implemented by the rule are sections 240.209(1), 240.209(3)(d), 240.209(3)(g), 240.2097, 240.227(20), 240.235(1), 240.264-.267, 240.531(3), 240.533(4)(a), and 832.07(1), Florida Statutes.
The parties stipulated that petitioners and intervenor have standing, as a matter of fact.

Petitioners' Burden
Section 120.56(1), Florida Statutes (1993) authorizes affected persons to seek an administrative determination of the invalidity of the rule on the ground that the rule is an *136 invalid exercise of delegated legislative authority. As the "one[s] who attack[ed] the ... rule," Agrico Chemical Co. v. State Dep't of Envtl. Regulation, 365 So.2d 759, 763 (Fla. 1st DCA 1978), cert. denied, 376 So.2d 74 (Fla. 1979), petitioners share the burden to show, at an administrative hearing,
that (1) the agency adopting the rule has exceeded its authority; (2) that the requirements of the rule are not appropriate to the ends specified in the legislative act; and (3) the requirements contained in the rule are not reasonably related to the purpose of the enabling legislation but are arbitrary and capricious,
Department of Admin., Div. of Retirement v. Albanese, 445 So.2d 639, 641 (Fla. 1st DCA 1984) (citation omitted), or that the rule is otherwise an invalid exercise of delegated legislative authority within the meaning of section 120.52(8), Florida Statutes (1993). The challengers' burden to demonstrate an invalid exercise of delegated legislative authority "is a stringent one indeed." Agrico, 365 So.2d at 763.
On appeal, "[i]n keeping with the rule of decision which forbids reaching constitutional questions when cases can be disposed of on statutory grounds, we turn first to p[etitioner]s' statutory claim[s]." Silver Rose Entertainment, Inc. v. Clay County, 646 So.2d 246, 248 (Fla. 1st DCA 1994), review denied, No. 84,875, ___ So.2d ___ (Fla. April 12, 1995). Although appellants do not cite section 120.52(8), Florida Statutes (1993), they maintain that the rule they have challenged is an invalid exercise of delegated legislative authority, on several bases enumerated in the statute. An "invalid exercise of delegated legislative authority" is defined in section 120.52(8), Florida Statutes, in part as follows:
(8) "Invalid exercise of delegated legislative authority" means action which goes beyond the powers, functions, and duties delegated by the Legislature. A proposed or existing rule is an invalid exercise of delegated legislative authority if any one or more of the following apply:
.....
(b) The agency has exceeded its grant of rulemaking authority, citation to which is required by s. 120.54(7);
(c) The rule enlarges, modifies, or contravenes the specific provisions of the law implemented, citation to which is required by s. 120.54(7);
(d) The rule is vague, fails to establish adequate standards for agency decisions, or vests unbridled discretion in the agency.
(e) The rule is arbitrary or capricious.
In effect, appellants argue that the "agency has exceeded its grant of rulemaking authority," § 120.52(8)(b), Fla. Stat. (1993), that the rule "enlarges, modifies, or contravenes the specific provisions of law implemented," § 120.52(8)(c), Fla. Stat. (1993), and that the rule "vests unbridled discretion," § 120.52(8)(d), Fla. Stat. (1993), in university presidents.
The legislature may authorize administrative agencies to interpret, Department of Professional Regulation, Bd. of Medical Examiners v. Durrani, 455 So.2d 515, 517 (Fla. 1st DCA 1984), but never to alter statutes. State, Dep't of Business Regulation, Div. of Alcoholic Beverages and Tobacco v. Salvation Ltd., Inc., 452 So.2d 65 (Fla. 1st DCA 1984). The precise rule of decision for determining whether an administrative rule crosses the line dividing statutory implementation from statutory abrogation is not always clear. Compare State, Dep't of Health and Rehabilitative Servs. v. McTigue, 387 So.2d 454 (Fla. 1st DCA 1980) (rule requirement that license applicant furnish names and addresses so agency could verify experience stricken as ultra vires) with Seminole Tribe of Florida v. State Dep't of Business Regulation, Div. of Alcoholic Beverages and Tobacco, 496 So.2d 193 (Fla. 1st DCA 1986) (rule upheld as "consistent with legislative purpose," at 194, which, inter alia, "clarifie[d] ... definition of Seminole Indians" and added "record keeping and documentation requirements." At 193). See generally Florida League of Cities, Inc. v. Department of Envtl. Regulation, 603 So.2d 1363 (Fla. 1st DCA 1992); Durrani.
While executive branch agencies cannot usurp legislative prerogatives, "rulemaking authority may be implied to the extent necessary to properly implement a statute governing the agency's statutory duties *137 and responsibilities." Fairfield Communities v. Florida Land and Water Adjudicatory Comm'n, 522 So.2d 1012 (Fla. 1st DCA 1988). "An administrative agency must have some discretion when a regulatory statute is in need of construction in its implementation." General Tel. Co. of Florida v. Marks, 500 So.2d 142, 144 (Fla. 1986). An administrative rule by which an agency exercises such discretion, or which fails to extinguish the discretion a statute confers, is not invalid on that account.

Statute Authorizes Exercise of Discretion
Appellants do not attack chapter 240, Florida Statutes (1993) on separation of power grounds. See generally B.H. v. State, 645 So.2d 987 (Fla. 1994); Chiles v. Children A, B, C, D, E, and F, 589 So.2d 260 (Fla. 1991). Section 240.209(3)(q), Florida Statutes (1993), confers on the Board of Regents broad authority to "[a]dopt such rules as are necessary to carry out its duties and responsibilities."
The Board of Regents is primarily responsible for adopting systemwide rules and policies; planning for the future needs of the State University System; planning the programmatic, financial, and physical development of the system; reviewing and evaluating the instructional, research, and service programs at the universities and monitoring the fiscal performance of the universities.
Section 240.209(1), Florida Statutes (1993). While the Board of Regents has primary responsibility for the system, the Board's responsibilities for universities' programs and fiscal performance are limited to reviewing, evaluating and monitoring. Section 240.105, Florida Statutes, provides:
(1) The Legislature finds it in the public interest to provide a system of higher education which is of the highest possible quality; which enables students of all ages, backgrounds, and levels of income to participate in the search for knowledge and individual development; which stresses undergraduate teaching as its main priority; which offers selected professional, graduate, and research programs with emphasis on state and national needs; which fosters diversity of educational opportunity; which promotes service to the public, which makes effective and efficient use of human and physical resources; which functions cooperatively with other educational institutions and systems; and which promotes internal coordination and the wisest possible use of resources.
(2) The mission of the state system of postsecondary education is to develop human resources, to discover and disseminate knowledge, to extend knowledge and its application beyond the boundaries of its campuses, and to serve and stimulate society by developing in students heightened intellectual, cultural, and humane sensitivities; scientific, professional, and technological expertise; and a sense of purpose. Inherent in this broad mission are methods of instruction, research, extended training, and public service designed to educate people and improve the human condition. Basic to every purpose of the system is the search for truth.
It is hard to imagine a more sweeping mandate, and impossible to accept the suggestion that the challenged rule does not advance the statutory purpose to establish "research programs with emphasis on state and national needs; which fosters diversity of educational opportunity ... [and] promotes service to the public." § 240.105(1), Florida Statutes.
The parties stipulated that a "number of students ... participate actively in Florida PIRG internship programs, all of whom receive academic credit for their work." Even outside the Department of Education, executive branch "agencies are given wide discretion in the exercise of their lawful rulemaking authority." Austin v. Department of Health and Rehabilitative Servs., 495 So.2d 777 (Fla. 1st DCA 1986). Academic freedom requires no less "wide discretion" in the Board of Regents and in state university presidents, which courts and hearing officers should be at pains to preserve. Broad discretion is both a necessity and a long-established tradition in matters involving a university's curriculum.
It is not the case, as appellants seem to contend, that every fee universities collect *138 pursuant to rule must be specifically denominated by statute. See Rule 6C-7.003(29) (Off-Campus Educational Activities Fees); Rule 6C-7.003(11) (Library Fines); Rule 6C-7.003(13) (Late Equipment Fees); and Rule 6C-7.003(16) (Standardized Test Fees). "[T]he validity of ... [a challenged] rule must be upheld if it is reasonably related to the purpose of the legislation interpreted and is not arbitrary and capricious." Durrani, 455 So.2d at 517.
Appellants complain specifically that implementation of the challenged provision is left to the discretion of individual university presidents. In their brief, they argue:
[T]he rule allows absolute discretion on the part [of] university presidents ... even after a majority of students sign a petition requesting its collection. Therefore, no university president has the duty to collect this donation... . [T]he fee is an option not a duty or responsibility.
If there is a statutory duty or responsibility on the part of the Board ... Rule 6C-7.003(9), Florida Administrative Code, contradicts this legal obligation by not mandating the collection....
But university presidents and university faculty have historically exercised significant autonomy in structuring the educational environments at their respective institutions.

Rule-Engendered Standardless Discretion
To the extent Florida Administrative Code Rule 6C-7.003(9) authorizes or recognizes this prerogative of individual institutions, it is consistent not only with historical practice but also with the statutory scheme. The governing statutes, not the challenged rule, confer this discretion. In one respect, however, the challenged rule itself confers unguided discretion on university presidents that they did not have before the rule was promulgated, viz., the "sole discretion" to decide between a "positive checkoff" and a "negative checkoff." While student contributions are no novelty as a source of funds for student activities, the rule calls certain mechanics into being. Until the rule was adopted, university presidents had no need to choose between "positive" and "negative checkoffs," which Florida Administrative Code Rule 6C-7.003(9) now requires, under circumstances specified in the rule.
An administrative rule which creates discretion not articulated in the statute it implements must specify the basis on which the discretion is to be exercised. Otherwise the "lack of ... standards ... for the exercise of discretion vested under the ... rule renders it incapable of understanding ... and incapable of application in a manner susceptible of review." Staten v. Couch, 507 So.2d 702 (Fla. 1st DCA 1987). Because a reviewing "court shall not substitute its judgment for that of the agency on an issue of discretion," § 120.68(12), Fla. Stat. (1993), an agency rule that confers standardless discretion insulates agency action from judicial scrutiny. By statute, a rule or part of a rule which "fails to establish adequate standards for agency decisions, or vests unbridled discretion in the agency," § 120.52(8)(d), Fla. Stat. (1993), is invalid.
The authority to make available to students an opportunity to perform public interest research or to participate in public affairs is part and parcel of university presidents' statutory discretion to establish instructional programs and academic curricula on their campuses. Florida Administrative Code Rule 6C-7.003(9) does not alter the scope of this traditional discretion. But the rule "fails to establish adequate standards for agency decisions," § 120.52(8)(d), Fla. Stat. (1993), for or against employing the "negative checkoff," i.e., collecting "donations" from registering students unless they expressly decline to contribute. In this one respect, Florida Administrative Code Rule 6C-7.003(9) itself "vests unbridled discretion in the agency." § 120.52(8)(d), Fla. Stat. (1993).
Florida Administrative Code Rule 6C-7.003(9) is devoid of any standards purporting to guide this exercise of discretion. No such standards are implicit in the statutes implemented. Even students who have signed a petition will not necessarily be alerted that a "negative checkoff" choice must be made when they register for classes. Florida Administrative Code Rule 6C-7.003(9) supplies no principled basis on which a university *139 president can decide whether a registering student's failure to indicate otherwise should be taken as a decision to contribute to the funding of a public interest research organization. No statute creates the "negative checkoff" device or requires that it be sprung on entering freshmen or other unwary registrants.
Because of constitutional concerns which we discuss below, this unlawful grant of discretion is doubly troublesome. We believe appellants are entitled to invalidation of Florida Administrative Code Rule 6C-7.003(9)(a)(2). Deletion of the negative checkoff option both eliminates standardless discretion and cures any claimed unconstitutionality in the rule's implementation of governing statutes. Unless the negative checkoff has some misleading or coercive effect, moreover, revenues will be undiminished by a positive checkoff mechanism.

Constitutional Grounds Urged
While the hearing officer did not address appellants' claims that the challenged rule is unconstitutional, see Department of Envtl. Regulation v. Leon County, 344 So.2d 297 (Fla. 1st DCA 1977), their motion as petitioners below to amend the rule challenge to include two constitutional arguments was granted without opposition, and fact finding proceeded accordingly. See Diaz v. Florida Dep't of Corrections, 511 So.2d 669 (Fla. 1st DCA 1987); Rice v. Department of Health and Rehabilitative Servs., 386 So.2d 844 (Fla. 1st DCA 1980).
On appeal, appellants urge the invalidity of the rule not only on the statutory basis urged below, but also on three separate constitutional grounds. Where the record is adequate, nothing precludes relying on a constitutional provision, as grounds for invalidating a rule, for the first time on appeal from a hearing officer's final order in an administrative rule challenge. Diaz. Cf. Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153 (Fla. 1982) (facial unconstitutionality of statute may be raised initially on appeal from the administrative order); Rice.

Constitutional Arguments
Appellants argue that Florida Administrative Code Rule 6C-7.003(9) violates two separate provisions of article VII of the Florida Constitution, sections 1(c) and 10. Section 1(c) provides: "No money shall be drawn from the treasury except in pursuance of appropriation made by law." Section 10 provides: "Neither the state nor any ... agency ... shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person."
In their initial brief, appellants equate the voluntary fees collected under the challenged rule with a compulsory tax. They contend that they are college students from whom "the fee assessed under this rule is collected under color of state law at the Florida State University." This contention lacks any force in light of our decision today that so much of the rule as purports to authorize use of a negative checkoff is invalid. Students' fees or donations must be the product of informed, free choice.[*] The rule does not authorize collection of any tax.
Appellants also contend that the rule can be read to authorize a state subsidy of public interest research organizations' fund raising efforts. But see Hasper v. Department of Admin., 459 So.2d 398 (Fla. 1st DCA 1984) (improper application of lawful rule, even when proven, does not invalidate rule). They argue that
[b]ecause ... [a university] cannot charge more than ten cents on the dollar for the fees it collects by virtue of this rule, it must pass on the cost incurred through increased tuition and fees as well as drawing on the state treasury.
The hypothetical appellants posit contemplates levels of collection so low that ten per cent will be too little to defray the costs of collection. But the rule does not authorize collecting any donation or fee unless "at least a majority of the students sign a written *140 petition requesting that a fee be collected." While such a petition does not guarantee any minimum level of contributions (especially as time passes), it reflects some interest on the part of a large number of students.
In any event, the record provides no support for appellants' professed fears that their hypothetical subsidy will materialize. Once a university president authorizes collection of the fees, the principal expense the university incurs may well be a few minutes of a salaried computer programmer's time. The rule also provides that "organizations must maintain a level of collection as set by the university." Fla. Admin. Code R. 6C-7.003(9)(b). Petitioners did not prove circumstances under which a state university would become a joint owner with, or a stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person, by virtue of the challenged rule. The rule authorizes no person or entity to use the university's credit.
Finally, appellants argue that the challenged rule provision authorizes "compulsory subsidization of ideological activity," in violation of the First Amendment. They rely on Chicago Teachers Union, Local No. 1, AFT, AFL-CIO v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) and Abood v. Detroit Bd. of Educ., 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). Again appellants' premise is flawed. Absent authorization for a negative checkoff, Florida Administrative Code Rule 6C-7.003(9) cannot even arguably work any compulsion. Students who choose to contribute are no more compelled to subsidize activities of which they disapprove than are state employees who elect to contribute to the United Fund by payroll deduction. Students who choose to take advantage of the educational opportunities public interest research organizations afford are under no greater compulsion than students who elect to enrol in philosophy, religion or political science courses.

Conclusion
In sum, we conclude that Florida Administrative Code Rule 6C-7.003(9) lawfully implements pertinent statutory provisions in authorizing individual universities, through the persons of their presidents, to facilitate establishment of research programs concerning state and national needs, foster educational diversity and promote public service by giving students an opportunity to support chartered public interest research organizations financially.
In leaving this decision to university presidents, the questioned rule recognizes discretion the governing statutes have conferred. To the extent the rule requires a choice that the statutes did not require, however, the rule itself confers discretion. This runs afoul of section 120.52(8), Florida Statutes (1993), because no standards guide the discretion. We eliminate this unlawful grant of unfettered discretion by invalidating so much of the rule as purports to authorize negative checkoffs, thereby obviating any need to reach appellants' constitutional arguments.
Accordingly, we affirm except as to Florida Administrative Code Rule 6C-7.003(9)(a)(2), as to which we reverse and remand, with directions that this subpart of the rule be invalidated.
BOOTH and ALLEN, JJ., concur.
NOTES
[*] Because no issue has been raised regarding the sufficiency of the information supplied to students to ensure that their donations represent an informed choice, we do not address the question.